**Peggy CARVER, Movant,**

v.

**COMMONWEALTH of Kentucky, Respondent.**

Supreme Court of Kentucky.

June 15, 1982.

As Modified July 9, 1982.

Daniel M. Burlew, II, Miller, Taylor, Burlew & Meyer, Owensboro, for movant.

Steven L. Beshear, Atty. Gen., W. Bruce Cowden, Jr., Asst. Atty. Gen., Frankfort, for respondent.

STERNBERG, Justice.

Movant Peggy Carver was convicted by a McLean County District Court Jury of violating certain local option laws. On the basis of a 1976 prior conviction for a similar violation, the jury found her to be a recidivist bootlegger and enhanced her punishment. The McLean Circuit Court affirmed the conviction in all respects except for the enhanced punishment portion. Movant unsuccessfully sought review of her case by the Court of Appeals, which denied her motion for discretionary review. This court granted her motion, and movant alleges some nine points of error were committed by the courts below. We reverse.

The procedural and factual developments giving rise to these claimed errors are simple. These events commenced during Christmas 1980 when, it appears, someone infused with yuletide cheer caused six fifths of whiskey (Lord Calvert) to be delivered to six different McLean County law enforcement officers. The prosecution's chief witness, one Curtis Humphrey, linked movant with those bottles. He testified that he received them in movant's home and that she instructed him to deliver them to the officers and to keep one for himself. The only defense witness was movant herself; she denied any participation in these events.

Movant was arrested pursuant to a warrant issued on December 29, 1980, and based upon a criminal complaint sworn to by one of the officers who received a bottle. She was charged with violating KRS 242.-230(1), which provides:

"242.230. Traffic in alcoholic beverages in dry territory prohibited—Unlawful possession prohibited.—(1) No person in dry territory shall sell, barter, loan, give, procure for or furnish another, or keep or transport for sale, barter or loan, directly or indirectly, any alcoholic beverage."

Movant appeared for trial before a six-person jury in the McLean District Court on February 17, 1981. At trial, over defense objection, the unsigned order of her 1976 prior local option conviction was admitted into evidence. The only other important testimony came from Officer James Stopher, who testified concerning Humphrey's good reputation for truth and veracity and movant's bad reputation for that same trait.

The jury returned a guilty verdict and, on the basis of her prior 1976 local option law conviction, she received the maximum enhanced sentence of 120 days in jail and a $200 fine under KRS 242.990(1). On appeal the McLean Circuit Court found error in the admission of the unsigned prior conviction. Instead of granting a new trial, however, the circuit court directed the district court to enter a new order sentencing movant to 60 days and a $100 fine.

Because we find this action by the circuit court erroneous, we reverse. Although the omitted signature could have been supplied at anytime before the judgment was introduced into evidence, "unless and until that omission is corrected those judgments are ineffective." *House v. Commonwealth*, Ky., 466 S.W.2d 949, 951 (1971). Obviously, as the circuit judge was aware, this omission mandated reversal. The question then becomes whether the circuit court acted properly in directing the district court to enter a reduced sentence or whether it should have ordered a new trial. The circuit judge directed the district court, on remand, to enter the maximum sentence for a first time offense. His basis for this remedy was that "it is obvious the jury intended to sentence appellant to the maximum permitted under the appropriate instruction." In doing so, the circuit court

improperly attempted to divine the intent of the district court jury. It is equally likely that had the jury not had before it evidence of movant's first offense, then it would not have imposed the maximum sentence. A new trial for movant would have removed any speculation about the possible outcome.

While we reverse primarily upon the issue discussed above, an examination of certain of movant's eight remaining grounds for reversal will aid the court and the parties in any retrial. Only two areas are worth considering at any length: (1) the issue concerning the presumption of innocence instruction, and (2) those issues dealing with the propriety of certain impeachment evidence. The remainder of movant's arguments are without merit.

■ Movant contends the failure to give her requested presumption of innocence instruction constituted reversible error *per se*, citing our first decision in *Whorton v. Commonwealth*, Ky., 570 S.W.2d 627 (1978). In light of subsequent opinions in that case by the United States Supreme Court, *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), and by this court, *Whorton v. Commonwealth*, Ky., 585 S.W.2d 388 (1979), the law on this issue is now clear:

> "In short, the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution. Under Taylor, such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." 441 U.S. at 789, 99 S.Ct. at 2090, 60 L.Ed.2d at 643.

■ While the trial judge is in the best position to consider the propriety of a presumption of innocence instruction in the totality of these circumstances, we must caution that in a case such as this where the evidence is not overwhelming but merely a "swearing contest" and evidence of a prior conviction is introduced, the absence of such an instruction when requested raises serious doubt about the constitutional fairness of the proceeding. Upon any retrial, the trial court should keep these considerations in mind in deciding the propriety of a presumption of innocence instruction.

Three of movant's issues presented to this court deal with impeachment evidence, and since the same confusion may occur during a retrial, we will consider each of them briefly.

Movant's fourth and sixth assignments of error concern efforts by both the prosecution and the defense to introduce evidence concerning the credibility of the Commonwealth's chief witness, Curtis Humphrey. They will be considered together. Movant's other impeachment issue concerns the Commonwealth's rebuttal evidence attacking movant's reputation for truth and veracity.

■ At trial movant, during her testimony, attempted to show bias and hostility on Humphrey's part because of an argument they had concerning a romantic involvement he allegedly had with her daughter. The district court sustained the prosecutor's objection and admonished the jury to disregard the testimony. Although no avowal was requested, the import of the testimony, to show bias and hostility on Humphrey's part, was reasonably clear from the stricken testimony. However, the Commonwealth's contention that a proper foundation for the introduction of this evidence was not established in the cross-examination of Humphrey appears uncontradicted. Thus, we cannot say that under these circumstances error resulted in the exclusion of this evidence. Upon any retrial of this case, the trial court should consider that where a proper foundation is laid, "(t)his court has long adhered to the principle that any evidence of a witness' bias, hostility, or interest is germane to the question of the credibility and should be presented to the jury." *Barrett v. Commonwealth*, Ky., 608 S.W.2d 374, 376 (1980).

Movant also claims the trial court erred in allowing the prosecution to introduce re-

buttal evidence by Officer Stopher concerning Humphrey's good reputation for truth and veracity. The Commonwealth attempts to justify the evidence by pointing to inconsistencies in Humphrey's testimony brought out by movant and to movant's testimony denying any transaction with Humphrey. Movant claims that since she was foreclosed from further impeaching Humphrey by showing possible bias and hostility, the prosecution's bolstering of its chief witness was particularly unfair in this case. Had movant laid a proper foundation for her testimony concerning bias and hostility and still been foreclosed from presenting it, this argument alone may have required reversal. In light of the foregoing, this problem should not occur upon a retrial.

■ Movant's argument that the trial court erred in admitting evidence concerning her bad reputation for truth and veracity is without merit. The Commonwealth correctly notes that movant wrongly cited that section of Lawson's Kentucky Evidence Law Handbook dealing with the use of *substantive* character evidence. In the section dealing with impeachment evidence, Lawson correctly states the law that "(a) criminal defendant who elects to testify in his own defense is subject to the same rules of credibility as other witnesses." *Lawson,* Sec. 4.15(E), p.55. Of course, one method of attacking a witness' credibility is "by evidence that his general reputation for untruthfulness renders him unworthy of belief." CR 43.07, RCr 13.04. The prosecutor may have followed more precisely the "formula" for eliciting reputation. We are not convinced the trial court committed error in allowing the introduction of this testimony.

We find no merit in movant's remaining assignments of error and will dispense with them accordingly with a few appropriately brief comments.

■ Movant argues that a bifurcated proceeding similar to that provided in the persistent felony offender statute is constitutionally mandated in a prosecution for a second violation of local option laws. We repeat our earlier statement made in *Brown*

*v. Commonwealth,* Ky., 551 S.W.2d 557, 560 (1977), that "(i)nsofar as we are advised, *Spencer* (*v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), which held that two-part jury trials for habitual criminals are not constitutionally mandated) has not been overruled." Absent a clear showing of a constitutional violation, any change in current statutory procedures must come from the legislature and not from this court. Since RCr 9.62 requiring testimony to corroborate that of an accomplice was abolished (September 1, 1980) before commission of the crime alleged here, movant's argument on this issue merits no further comment. Movant did not raise in the circuit court the argument that the evidence failed to establish that alcoholic beverages were given away, and the issue is thus not properly before us. At any rate, we are also unpersuaded by her substantive arguments on this issue. Finally, we are not convinced that movant's conviction under KRS 242.230 violated her due process and equal protection guarantees. The statute is not unconstitutionally vague and no equal protection violation occurred even if, as movant maintains, "giving away booze was a common occurrence that had not been systematically enforced."

The judgments of the McLean Circuit Court and the McLean District Court are reversed, and this action is remanded to the McLean District Court for a new trial consistent with this opinion.

All concur except CLAYTON, J., who dissents.