Rigdon Leslie LaMASTUS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 92–CA–2884–MR.

Court of Appeals of Kentucky.

June 24, 1994.

Mark Wettle, Appellate Public Advocate, Louisville, for appellant.

Chris Gorman, Atty. Gen., Amy F. Howard, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWERTON, JOHNSTONE and WILHOIT, JJ.

JOHNSTONE, Judge.

Rigdon Leslie LaMastus appeals from a judgment of the Warren Circuit Court convicting him of fraudulent use of a bank debit card. He was sentenced to one year probated for three years. After reviewing the arguments of the parties and the record, we must reverse the conviction and remand for a new trial.

Minnie Taft offered to let LaMastus move into her home in the spring of 1991, because he had no other place to live. Taft gave LaMastus his own bedroom and did not ask LaMastus to pay rent or expenses. However, Taft's husband was bedridden, and LaMastus occasionally helped Mrs. Taft to care for her husband and to do grocery shopping.

To avoid overdraft problems, Taft got a bank debit card to pay her bills. She allowed LaMastus to use the card for grocery shopping. Taft testified that LaMastus refused to return the card upon her request, but LaMastus testified that he gave her the card when she asked for its return. Apparently, LaMastus charged $568.72 to the card before Taft got it back from him. She informed a social worker from the Cabinet for Human Resources, and the social worker recommended that Taft call the police. Mrs. Taft did so, and LaMastus was arrested for fraudulent use of a bank card and theft of a ring belonging to Mr. Taft.

A jury found LaMastus guilty of the fraudulent use charge and not guilty on the theft charge. LaMastus now appeals on the grounds that the trial court erred by permitting the introduction of "investigative hearsay" by a police officer, and by allowing the prosecutor to introduce impermissible character evidence of both Mrs. Taft and LaMastus.

LaMastus initially contends that the testimony of Police Officer Brown, the Commonwealth's first witness, constituted extensive hearsay and prejudiced the jury. During trial, Brown started to relate what Mrs. Taft had told him about the offense. LaMastus' counsel objected on hearsay grounds, and the trial judge sustained the objection. Brown then continued to explain the case facts, but soon testified again concerning Mrs. Taft's statements to him. LaMastus' counsel again objected, but the judge overruled the objection for the purpose of allowing Brown "to relate the nature of the complaint" to the jury. The judge then allowed Brown to discuss what Mrs. Taft had reported to him during the investigation leading to LaMastus' arrest, culminating with Brown stating, "She (pause) at that point in time, and with concern for her safety and the safety of her husband, I obtained a district court warrant ... [for LaMastus' arrest]."

LaMastus argues that Brown's testimony constituted "investigative hearsay," the introduction of which has been repeatedly condemned by Kentucky courts. The Commonwealth counters that Brown merely testified as to what Taft later repeated. Because Taft testified and was available for crossexamination, the Commonwealth claims that any error was harmless, citing *Carter v. Commonwealth*, Ky., 782 S.W.2d 597, (1989) *cert. denied*, 497 U.S. 1029, 110 S.Ct. 3282, 111 L.Ed.2d 791 (1990). We disagree.

Our Supreme Court dealt with a similar situation in *Bussey v. Commonwealth*, Ky., 797 S.W.2d 483 (1990). In *Bussey*, the victim of sexual abuse testified concerning his recollection of the offense. Then, during the Commonwealth's case in chief, four police officers were permitted to repeat the victim's version of the events. *Id.* at 484. Additionally, the trial court allowed one of the officers to testify as to his conclusion of whether the events had transpired as the victim had described. The officer was permitted to state, "Yes. I came to the conclusion that there had to have been some type of misconduct or I would not have received a complaint." *Bussey*, 797 S.W.2d at 485.

In reversing the *Bussey* conviction, the Supreme Court cited *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988), for the rule that a police officer may testify about information furnished to him only where it tends to explain the action that was taken by the police officer and not to prove the facts told. *Bussey*, 797 S.W.2d at 486 (quoting *Sanborn, supra*, at 541). The *Bussey* Court stated:

> The only witnesses to the occurrence of this crime were appellant and the Bussey brothers. To arrive at a conviction, it was necessary for the jury to believe the victim and disbelieve appellant. As such, the jury was required to determine the credibility of all fact witnesses. This process was flawed when four law enforcement witnesses were permitted to bolster the victim's testimony by repeating what he had told them.

*Bussey*, 797 S.W.2d at 485. Concerning the police officer's conclusion, the Court continued:

There is little doubt that Officer Shirley's statement amounted to a declaration that he believed the story told by the victim. In a number of cases, this has been held reversible error. [Citations omitted].

. . . .

In this case, the police officer testified that he believed the victim's report of the incident and determined on this basis to initiate further investigation by telling his captain. . . .

This Court has firmly rejected the admission of hearsay evidence under the so-called "investigative hearsay exception." Trial courts and counsel should understand that such evidence is no less hearsay because it comes from a police officer and that any conviction obtained through the use of such evidence is in jeopardy of reversal.

*Id.* at 485–86.

In the case at bar, Officer Brown was permitted to testify concerning the facts of the case as told to him by the victim, Mrs. Taft. He then stated to the jury that, based upon those facts, he obtained an arrest warrant for LaMastus because of his concern for the Tafts' safety. Officer Brown's actions were not an issue in this case. *Cf. Sanborn*, 754 S.W.2d at 541. We believe that, according to *Bussey, supra*, Officer Brown's testimony improperly lent credence to Mrs. Taft's testimony and unfairly prejudiced the jury in her favor.

■ Furthermore, *Carter*, 782 S.W.2d 597, cited by the Commonwealth for the proposition that such testimony is harmless, is distinguishable from this case by the fact that the statements made in *Carter* did not directly name or implicate the defendant. *Carter*, 782 S.W.2d at 600. That is not the case here. Finally, the Commonwealth does not argue, nor do we find, that Brown's testimony qualified as an exception to the hearsay rule. *See* KRE 803–805. Consequently, we must reverse the conviction by the trial court.

■ LaMastus also argues that the trial court erred by allowing the prosecutor to introduce impermissible character evidence

of both LaMastus and Taft. Specifically, LaMastus claims that the Commonwealth improperly bolstered Taft's credibility by introducing on rebuttal several witnesses to testify to her reputation for truthfulness. LaMastus argues that this violated KRE 404(a) because Taft's reputation for truthfulness had not been attacked. LaMastus also contends that the trial court erred by allowing the Commonwealth to solicit testimony from these witnesses that he was a known liar, when LaMastus had not placed his reputation for truthfulness at issue.

The trial judge conducted an extensive hearing to determine what character evidence would be allowed on rebuttal. Because both LaMastus and Taft had testified as "witnesses" during the trial, he determined that KRE 404(a)(3) applied, rather than KRE 404(a)(1)–(2), and allowed the introduction of character evidence under KRE 608. The judge concluded that KRE 608 permitted the introduction of general reputation evidence of each's credibility, citing Robert Lawson, *The Kentucky Evidence Law Handbook*, § 4.15 (2d ed. 1984). The judge noted that the new Kentucky Rules of Evidence had been enacted since the Lawson *Handbook,* but he determined that the analysis did not change under the new rules. We agree.

KRE 404(a) provides:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) Character of accused.

Evidence of a pertinent trait of character or of general moral character offered by an accused, or by the prosecution to rebut the same;

(2) Character of victim generally.

Evidence of a pertinent trait of character of the victim of the crime offered by an accused, other than in a prosecution for criminal sexual conduct, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution

in a homicide case to rebut evidence that the victim was the first aggressor;

(3) *Character of witnesses.*

*Evidence of the character of witnesses, as provided in KRE 607, KRE 608, and KRE 609.*

(Emphasis added). And, KRE 608 provides:

Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to the limitation that the evidence may refer only to general reputation in the community.

No cases in Kentucky have yet addressed the interaction of KRE 404(a)(3) and KRE 608. However, Robert Lawson, *The Kentucky Evidence Law Handbook* (3d ed. 1993), published after the new Rules of Evidence were enacted, notes the incomplete and inconsistent nature of KRE 608 in relation to the other Rules dealing with character evidence. *Id.* at § 4.25. Nevertheless, Lawson states that, "By its terms, KRE 608 applies to anyone who testifies.... With no special protection an accused who testifies opens the door to an attack on his character or truthfulness." Lawson, *supra,* at p. 203. Furthermore, Lawson notes that it is unclear whether the pre-existing law preventing witness rehabilitation until after the witness's truthfulness has been attacked survives adoption of the new Rules. *Id.* at 202–03.

As applied to this case, LaMastus chose to testify on his own behalf. By doing so, he became subject to the same rules for impeachment and credibility as other witnesses. *See Carver v. Commonwealth,* Ky., 634 S.W.2d 418, 422 (1982); Lawson, *supra,* at 203. Moreover, LaMastus' contention that KRE 404(a)(1) operates to prevent the prosecution from offering rebuttal character evidence when he has not placed his truthfulness in issue fails. KRE 404(a)(3) allows the introduction of character evidence of witnesses as provided in KRE 608, which permits the credibility of *all* witnesses to be attacked or supported by general reputation or opinion evidence. Neither KRE 404(a)(3) nor KRE 608 restricts the order in which the evidence can be presented. Therefore, we find that the trial judge properly permitted

the introduction of evidence concerning La-Mastus' credibility and truthfulness.

 Furthermore, because Taft also testified as a witness at trial, she too qualifies as a "witness" for the purpose of applying KRE 404(a)(3) and KRE 608. We also note that LaMastus attacked Taft's credibility and ability to tell the truth during his direct and cross-examinations. While the prosecutor's attempts to bolster Taft's credibility prior to LaMastus' attack might have been improper, (*see, e.g.* Lawson, *supra*, at 202–03) any error was rendered harmless when the credibility evidence became admissible to rebut LaMastus' attack. *See Reed v. Commonwealth,* Ky., 738 S.W.2d 818 (1987). The *Reed* Court held that proper rebuttal evidence of credibility, although admitted during trial in improper order, was not prejudicial to the defendant. *Id.* at 821. The trial judge correctly limited all character evidence to truthfulness and general reputation of credibility. We consequently affirm the trial court's resolution of the character evidence issue.

For the foregoing reasons, the verdict of the Warren Circuit Court is reversed on the issue of improper admission of hearsay testimony and remanded for further proceedings consistent with this opinion.

HOWERTON, J., concurs.

WILHOIT, J., concurs in part and dissents in part and files a separate opinion.

WILHOIT, Judge, concurring in part and dissenting in part.

I concur with the result reached by the majority; however, I must dissent as to its interpretation of KRE 404 and KRE 608. Codification, if it may on occasion, certainly does not always result in clarification. Our predicament with respect to these two rules, while rendered much more difficult by the abstruse wording of KRE 608, would be only slightly less so had the General Assembly adopted that rule as originally proposed.

KRE 404(a)(1) specifically limits the prosecution's introduction of evidence hearing on the character of an *accused* to rebuttal. As to evidence hearing on the character of witnesses, that rule refers us to KRE 607, 608, and 609; KRE 608 deals with how the credibility of a *witness* may be attacked. This, of course, raises the question of what to do in the situation of an *accused* who also becomes a witness. If we apply the customary rule of statutory construction, then the rule dealing specifically with evidence of the character traits of an accused would take precedence over the rule dealing with evidence of the character traits of any witness. Unfortunately, KRE 608 has no official commentary to aid in its construction. Fortunately, KRE 404 does, albeit rather obliquely as to the issues at hand. The commentary states that KRE 404 "adopts the traditional approach to the use of character evidence." Viewed in the light of our traditional common law rule, KRE 404 must not be intended to have application to the character of an accused who is also a witness, insofar as his character for truthfulness or untruthfulness is concerned. Admittedly the rule does not specifically say that, but such is the only way to keep it from being a marked departure from "the traditional approach."

KRE 608 by its terms seems intended to apply to *how* the credibility of a witness may be supported or attacked. In limiting the method for doing this to evidence of "general reputation in the community," logic and history argue that this rule has reference to evidence of the reputation of the witness for truthfulness. This rule does not by its terms speak to *when* such an attack is proper, and we have been referred to no section of the Kentucky Rules of Evidence which does.

I can only conclude that with respect to the impeachment of a testifying criminal defendant or any witness by evidence of his reputation for truthfulness, the common law rule still obtains and the impeachment of the appellant on this basis would not have been error. Likewise, the common law rule still obtains as to when it is proper to support the credibility of a witness other than the defendant by evidence of his reputation for truthfulness. For this reason, I believe it was error to admit such evidence until the credibility of the witness has been attacked.