**PICKARD CHRYSLER, INC., Appellant,**

v.

**Lois SIZEMORE, Appellee.**

**No. 94–CA–000951–MR.**

Court of Appeals of Kentucky.

Sept. 8, 1995.

Discretionary Review Denied by Supreme Court April 17, 1996.

Matthew W. Breetz, Lexington, for appellant.

Phillip Lewis, Hyden, for appellee.

Before HOWERTON, JOHNSON and SCHRODER, JJ.

SCHRODER, Judge:

This is an appeal from a judgment awarding appellee $417,457.55 for damages caused by appellant's negligence in repairing appellee's automobile. After considering appellant's argument, the record and the applicable law, we affirm.

In January of 1992, appellee, Lois Sizemore, purchased a 1987 four-cylinder Pontiac Grand Am from appellant, Pickard Chrysler, Inc. ("Pickard"), along with a service contract on the car. After owning the car for about two weeks, Sizemore began experiencing problems with it. She notified Pickard of the problems and they towed the car to their premises and began working on overhauling the engine, which took about six weeks. On March 26, 1992, Sizemore, along with her ex-husband, one and one-half year old son and a friend of the family, Earl Bowling, arrived to pick up the car at about 4:30 p.m. When Sizemore attempted to start the car to take it home, it would not start. Pickard determined the problem to be the starter, but claimed repairing the starter was not covered by her service contract. After some negotiations, Pickard agreed to fix the starter.

As they left the lot after the starter had been repaired, Bowling drove the Pontiac, and Sizemore sat in the passenger seat, while her ex-husband and son rode in another vehicle. When they reached I-75, Sizemore moved into the car with her ex-husband and child, and Bowling was alone in the Grand Am. According to Bowling, the car ran fine for about forty to fifty miles. At that point, the car backfired and quit when he was going down a hill. When Bowling pulled off to the side of the road, Sizemore and her ex-husband turned around and came back to the Grand Am. The car would not start, so they took the breather off, allowed it to dry and placed it back in the car.

Sizemore then began driving the Grand Am the rest of the way to Hyden. Sizemore testified that for the remainder of the trip, the car was operating sluggishly and missing, although no engine or warning light ever came on. Upon reaching Hyden, Sizemore dropped her ex-husband off at a garage to watch a ballgame. As she was pulling out of the garage, the car backfired three times and burst into flames. According to Sizemore's testimony, the fire immediately spread into the interior of the car. She grabbed her son and exited the car. As she did so, her left foot caught in the door. The car then became totally engulfed in flames and immediately burned up. After the accident, Sizemore received medical treatment for injuries to her knee and back and for a nervous condition.

On November 12, 1992, Sizemore filed the action herein against Pickard alleging that Pickard negligently repaired the car. A trial was held on March 17, 1994, at which time the jury awarded Sizemore $200,000.00 for mental and physical suffering, $13,457.55 for medical expenses, and $200,000.00 for the permanent impairment of her power to earn money. This appeal by Pickard followed.

Pickard first argues that the trial court erroneously permitted Sizemore to introduce evidence regarding her loss of future earnings. Sizemore alleged in her complaint that she received "serious physical injuries, including medical bills, pain and suffering, permanent disfigurement and impairment as well as future medical bills." In response to Pickard's interrogatory regarding specific damages claimed, Sizemore answered: "Medical bills, $14,000.00; pain and suffering $300,000.00; future disfigurement and impairment, $200,000.00; future medical $15,000.00." During discovery, Pickard also requested from Sizemore, "If the Plaintiffs are alleging in their Complaint that they have suffered an impairment of their future ability to earn money, please attach all tax and income records for the plaintiffs for 1988 through 1992." Sizemore did not produce any tax or income records and explained later that she did not have such records as she had never filed a tax return. Pickard contends that Sizemore's pleadings and answers to interrogatories and the fact that she

did not produce any tax or income records failed to put Pickard on notice that she was claiming loss of future earnings.

In our view, the language in Sizemore's complaint claiming "permanent disfigurement and impairment" and the response to the interrogatory claiming $200,000.00 therefor, although not quite as explicit as it could have been worded, should have been sufficient to put Pickard on notice of the claim for future lost wages. In fact, it appears Pickard was on notice of such claim, given the wording of its discovery request for tax and income records. In any event, when Pickard claimed surprise at trial that Sizemore was putting on evidence of loss of future earnings, the court offered to allow Pickard extra time to review said evidence, but Pickard refused. Therefore, Pickard waived its right to argue it was surprised at trial by such evidence.

■ Pickard's second argument is that the trial court erred in permitting an instruction regarding the diminution of Sizemore's future earnings. Pickard maintains there was insufficient evidence of any future impairment of Sizemore's ability to earn money and there was no evidence to establish any reasonable future financial damages Sizemore would suffer.

Following the accident, Sizemore was treated for her knee injury by Dr. David Muffly, who performed arthroscopic surgery on the knee which revealed chondromalacia of the lateral femoral condyle and of the patella. Dr. Muffly testified that he believed the knee injury to be related to the accident and assessed a 5% permanent impairment to Sizemore for the knee injury.

Sizemore was also treated by Dr. George Chaney who testified that, as a result of the accident, she suffered a fracture of the vertebra at T12, internal derangement of the right knee, knee strain and a contusion to her back area. He further stated that her activities would be permanently limited as far as repetitive bending, stooping, prolonged sitting, prolonged standing and heavy lifting. Dr. Chaney assessed a 13% permanent impairment to the body as a whole.

Finally, Dr. James Templin testified that he examined Sizemore and found that she suffered from chronic knee pain syndrome, chronic low back syndrome and a compression fracture as a result of the accident. He assessed a permanent impairment rating of 14% to the body as a whole. He also testified that Sizemore would have permanent limitations affecting activities such as standing, walking, climbing, stooping, crouching, kneeling, bending, sitting and repetitive or prolonged activities.

Sizemore was 22 years of age at the time of the accident and according to the life expectancy table admitted at trial, should have 55.3 years to live. At that time, she was working at a grocery store and testified that she was earning $250.00 a week, but produced no documentary proof thereof. Shortly before the accident, Sizemore had received her certification as an emergency medical technician and testified she was at the top of her class. She then enrolled in a college program to receive training as a paramedic. However, she claimed the accident forced her to drop out of college because she physically could not perform the duties of a paramedic. No evidence was presented at trial as to how much a paramedic in that area earns.

Sizemore further claimed she is now unable to work any of the jobs she worked prior to the accident (cook, grocery store clerk, drugstore clerk). She testified she now has to have help at home to do housework and to care for her child.

■ Pickard argues that because there was no evidence presented at trial of what a paramedic earns, Sizemore was not entitled to an instruction on future lost wages because such an award would be speculative. We do not agree. Evidence of past earnings is not always a prerequisite for an award for loss of future earnings. There have been cases in which, even though the plaintiff has never held a job (because of her young age or because she was a homemaker), she could nevertheless be found to have an earning capacity and be awarded future lost wages for a permanent injury. *Arnett v. Thompson*, Ky., 433 S.W.2d 109 (1968); *Spurlock v. Spurlock*, Ky., 349 S.W.2d 696 (1961).

While there was no evidence of what a paramedic earns, the jury's award in this case did not necessarily have to be based on Sizemore's lost wages as a paramedic. Sizemore did testify that she earned $250.00 a week at the time of the accident as a grocery clerk and there was evidence that she could no longer perform that job or any of the other jobs she had. Sizemore was only 22 years of age at the time and had only a brief work history. In our view, given the evidence of permanent impairment and Sizemore's young age, the instruction on diminution of future earnings and the resulting award of $200,000.00 were not error, even though there was little evidence of her past job history and earnings.

■ The next issue raised by Pickard concerns a motion for a continuance filed by Pickard two days before trial, which was overruled by the trial court. As grounds for the motion, Pickard alleged that they needed the depositions of Dr. Gilbert and Dr. Olejneczak because one of Sizemore's expert witnesses, Dr. Chaney, had relied on reports of Gilbert and Olejneczak in his deposition which was taken only eight days prior to trial.

Pickard failed to comply with the requirement of CR 43.03 that a motion for a continuance must be accompanied by "affidavits showing the materiality of the evidence expected to be obtained and that due diligence has been used to obtain it. If the motion is based on the absence of a witness, the affidavit must show what facts the affiant believes the witness will prove." In this case, no such affidavit was filed with the motion. Also, Pickard had been provided with the reports of Dr. Gilbert and Dr. Olejneczak some months prior to trial. Further, we could not see that Dr. Chaney relied on the reports of either doctor in his deposition. It is well established that a motion for postponement of trial lies within the sole discretion of the trial court. *Lewis v. Liming,* Ky.App., 573 S.W.2d 365 (1978). We cannot say the trial court in the present case abused its discretion in overruling the motion for a continuance.

■ Pickard also argues that the trial court erred in prohibiting Pickard from introducing evidence of the good reputation of one of its witnesses, Kenneth Messer, the service manager of Pickard. At trial, Messer testified regarding the events which transpired when Sizemore came to pick up her car, the work performed on Sizemore's car and the possible causes of the fire. After Messer testified, Clyde Pence was called by Pickard to testify as an expert about the cause of the fire. During the course of his testimony, Pence was asked on direct, "Uh—Mr. Pence do you have an opinion as to the general reputation in the community of Kenny Messer?" Sizemore objected and the court sustained the objection, reasoning that Pickard could not bolster its witness' credibility with evidence of that witness' good reputation unless the other side first introduces evidence that it is bad.

KRE 404(a)(3) allows character evidence of a witness to be admitted as provided in KRE 607, KRE 608 and KRE 609. KRE 608, which applies in this case, provides:

Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to the limitation that the evidence may refer only to general reputation in the community.

■ The language of KRE 608 is silent as to when this character evidence can be admitted and whether the witness' reputation must first be attacked in order to present evidence of good character as was the rule under the preexisting law. Robert Lawson, *The Kentucky Evidence Law Handbook,* (3d. ed. 1993) at 202–203 provides some guidance on the issue and theorizes "that the preexisting law ... has survived adoption of the new rule." In *LaMastus v. Commonwealth,* Ky. App., 878 S.W.2d 32 (1994), this Court interpreted KRE 608, and, in so doing, strongly suggested that the witness' credibility must first be attacked in order to present evidence of good character. The Court stated, "While the prosecutor's attempts to bolster Taft's credibility prior to LaMastus' attack *might have been improper,* ... any error was rendered harmless when the credibility evidence became admissible to rebut LaMastus' at-

tack." *Id.* at 36. (Emphasis added.) However, the Court found it unnecessary to conclusively rule on the issue since evidence attacking the witness' credibility was eventually presented, rendering any error harmless.

We hold that it continues to be the law that evidence of good character cannot be introduced until after the witness' character has been attacked. Accordingly, the trial court in the case at hand properly disallowed the testimony regarding Messer's character.

■ Pickard next argues that the judgment was not supported by sufficient credible evidence. In this argument, Pickard maintains that Sizemore did not establish that Pickard was negligent or that Pickard was the proximate cause of the injuries.

Sizemore's expert, Caudill, testified that a loose plug wire caused a backfire which resulted in the fire. He stated that given the repairs that Pickard had just made on the car, it was his opinion that Pickard had left the plug wire loose in making those repairs. Pickard contends that this testimony ignores evidence that the plug wire was loosened by actions of Sizemore or the individuals with her. From our review of the record, there was no such evidence. There was evidence that Sizemore or one of the persons with her took the breather off the car, but there was no evidence that anything else was touched in the process. In fact, Pickard presented no evidence or explanation as to the cause of the fire. Pickard simply maintained that they could not be responsible for the loose plug wire because they had hooked the engine up to an analyzer which would have revealed the loose wire. However, Pickard's own expert witness, Clyde Pence, testified the analyzer may not have detected the loose plug wire depending on how loose it was. Pickard also points to the evidence that the car ran fine for 40–50 miles as evidence that they could not have caused the loose wire. Again, Sizemore presented testimony that it would be possible for the plug wire to be loose, but held in place by the plug boot such that the car could still run for a period of time. Pickard further complains that Sizemore never ruled out that another structural deficiency in the car may have caused the fire. However, there was no evidence of any other structural deficiency in the car.

■ Pickard next argues that Caudill's testimony was not supported by fact because the car was not re-examined until 16 months after the accident. Pickard maintains that common sense dictates one could not determine the cause of the fire in the engine of a car that has been outside for 16 months. We disagree, especially in light of the fact that Pickard failed to present evidence as to how this lapse of time and exposure would have affected the engine such that any evidence relying thereon would be inherently unreliable.

■ A directed verdict should be granted, when, drawing all inferences in favor of the non-moving party, reasonable men could only conclude that the moving party was entitled to a verdict. *Garrison v. Jervis B. Webb Co.,* 583 F.2d 258 (6th Cir.1978). A question of whether an accident was caused solely by the defendant's negligence, or was contributed to by plaintiff, should be left to the jury to determine, and it is only when one fair and reasonable conclusion can be drawn from the evidence that a directed verdict should be given. *Eichstadt v. Underwood,* Ky., 337 S.W.2d 684 (1960). In view of the evidence in this case, we believe the court properly put the question of Pickard's negligence to the jury.

■ Pickard's remaining argument is that the jury's verdict was excessive and not supported by the evidence because of evidence of prior injuries suffered by Sizemore that Pickard maintains could have caused the injuries complained of in this case. Sizemore testified that when she was a young girl she suffered a minor laceration to her right knee and had to have three stitches. She testified that after her knee healed from that accident, though, she never had any problem with the knee until the accident in the present case. She also testified to having a car accident when she was sixteen in which she was rear-ended. She stated she suffered a whiplash injury to her neck and back from that accident, which caused some soreness, but that the injury was not significant enough for treatment. She testified that her

present back injury was completely different from her former injury and that she had fully recovered from her previous back injury and was able to resume all activities thereafter. No other evidence of Sizemore's previous injuries was presented.

Dr. Chaney and Dr. Muffly did not testify as to if or how Sizemore's previous injuries could have affected her present injuries. Dr. Templin testified on cross-examination that even if Sizemore did hypothetically suffer all of the prior injuries described by Pickard's counsel, he would nevertheless have assigned at least a 9% permanent impairment rating to Sizemore.

In view of the above evidence, we cannot say the verdict was excessive or unsupported by the evidence because of Sizemore's prior injuries. Further, we could not find that this issue was raised before the court in a motion for directed verdict or in a post-judgment motion.

For the reasons stated above, the judgment of the Leslie Circuit Court is affirmed.

All concur.