448 So.2d 782 (1984)
STATE of Louisiana, Appellee,
v.
Raymond GREEN, Appellant.
No. 15852-KA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 1984.
*784 Kidd, Jones & Kidd by Paul Henry Kidd, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., Dan G. Grady, Asst. Dist. Atty., Ruston, for appellee.
Before PRICE, HALL and NORRIS, JJ.
HALL, Judge.
The defendant, Raymond Green, was charged by grand jury indictment with two counts of distribution of a controlled dangerous substance in violation of LSA-R.S. 40:966 in that he did knowingly and intentionally distribute marijuana on September 15, 1981 and September 30, 1981. After trial before a 12-person jury, defendant was found guilty of possession of marijuana in response to the first count and guilty of distribution of marijuana as charged in response to the second count. He was sentenced to six months imprisonment in the parish jail on the possession conviction and 10 years imprisonment at hard labor on the distribution conviction, the sentences to *785 run consecutively. Defendant appealed and assigns nine errors. Finding that none of the errors assigned have merit, we affirm the convictions and sentences.
In the fall of 1981 the Louisiana State Police assigned one of their undercover drug investigators, Charles Michael Epps, to work in Lincoln Parish. The investigating officer met the defendant through a police informant, John Robeaux. On September 15, 1981 Epps went to the defendant's home and purchased a fourth of a pound of marijuana at a cost of $80. On September 29, 1981, Epps sought to purchase more marijuana from the defendant but was told to return the following day. On September 30 the officer returned and purchased one kilogram of marijuana from the defendant for $700. On both occasions the agent was equipped with a body microphone and a recording was successfully made of the second of the two transactions. The agent was accompanied by the informant on both occasions.
Assignment of Error No. 1
By this assignment the defendant contends that the trial court erred in allowing the state to exercise its peremptory challenges in a racially discriminatory manner. The defendant filed a motion to quash the petit jury venire based on the state's exercise of 9 of its 10 peremptory challenges to exclude 9 prospective black jurors. The trial court denied the motion, finding that there was no historical or systematic pattern of discriminatory use of peremptory challenges in Lincoln Parish. The defendant contends that no pattern of discriminatory use of peremptory challenges could be established because no evidentiary hearing was conducted.
As pointed out by the state, three of the jurors selected for service on the jury were black and were not challenged by the state. The defendant is white. When the motion to quash was argued the defendant did not offer any evidence or request an evidentiary hearing at that time in order to make a showing of a historical pattern of discriminatory use of peremptory challenges by the state.
An accused is not denied equal protection when the state, through the use of peremptory challenges, prevents blacks from serving on the jury unless the defendant can prove systematic exclusion over a period of time. Where a defendant is able to establish a prima facie case of such systematic exclusion, the burden shifts to the state to show that no discrimination was practiced. Defendant must not be denied the opportunity to make his prima facie showing. State v. Square, 433 So.2d 104 (La.1983); State v. Perry, 420 So.2d 139 (La.1982); State v. Bias, 354 So.2d 1330 (La.1978); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
In this case there was no showing of a systematic exclusion of blacks from juries over a period of time, nor is there any indication that the defendant sought the opportunity or was prepared to make such a prima facie showing. Accordingly, the trial court was correct in denying defendant's motion to quash and this assignment of error lacks merit.
Assignment of Error No. 2
By this assignment the defendant contends that the trial court erred in allowing the state to introduce into evidence certain oral statements purporting to be res gestae which were not properly disclosed to defendant prior to trial in response to discovery under LSA-C.Cr.P. Art. 716. In response to the defendant's discovery motion the state responded that it would offer res gestae statements. While on the stand Officer Epps testified as to statements made by the defendant on the evening prior to the second drug purchase. According to the testimony of the officer he went to the defendant's residence to purchase marijuana, the defendant made inquiries by phone to obtain the substance, and the defendant then told the officer to come back the following day.
What forms any part of the res gestae is always admissible in evidence. Res gestae are events speaking for themselves *786 under the immediate pressure of the occurrence, through the instructive, impulsive, and spontaneous words and acts of the participants. To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in connection with it one continuous transaction. LSA-R.S. 15:447 and 448.
The negotiations carried on by the undercover officer with the defendant on the evening prior to the actual sale, and the statements made in the course of such negotiations, were part of one continuous transaction and constituted part of the res gestae. The state disclosed that res gestae statements would be offered into evidence in response to defendant's discovery motion, and defendant took no steps to require the state to be more specific in its disclosure. As part of the res gestae the statements constituted admissible evidence and were within the scope of the state's disclosure.
This assignment of error lacks merit.
Assignment of Error No. 3
By this assignment the defendant contends that the trial court erred when it refused to compel the state to introduce into evidence the marijuana alleged to have been purchased in connection with the count No. 2 transaction.
During the testimony of Officer Epps a lab report was introduced purporting to identify the substance purchased from the defendant as marijuana. The defendant objected on the grounds that the state, by failing to offer into evidence the marijuana itself, had failed to establish a chain of custody showing that the marijuana tested by the crime lab was the same marijuana purchased by the officer from the defendant. The trial court correctly overruled the objection, noting that the chain of custody was properly established by the testimony of the officer and the information shown on the lab report which was not disputed.
On appeal the defendant argues that the marijuana itself is the best evidence of the nature of the substance obtained by the officer from the defendant and that under LSA-R.S. 15:436 the best evidence must be produced. The best evidence objection was not made in the trial court and cannot properly be raised on appeal. In any event, however, absent a showing of some prejudice to the defendant, the best evidence rule will not be applied unreasonably. State v. Moore, 419 So.2d 963 (La.1982). The defendant has failed to show how he was prejudiced by the introduction of only the lab report and not the physical evidence itself. No reversible error is shown. This assignment lacks merit.
Assignments of Error Nos. 4 and 9
By these assignments the defendant contends that the trial court erred when it allowed the state to excuse from subpoena a key and material witness without the knowledge and consent of the defense, thus causing the absence and unavailability of a material witness, and that the court further erred when it failed to instruct the jury of the legal presumption that evidence under the control of a party and not produced by him was not produced because it would not have aided him.
John Robeaux, the informant who was present during both transactions, was subpoenaed as a witness by the state. Prior to trial the prosecutor released the witness from the subpoena. After the jury had been selected and sworn, when defense counsel learned that the witness had been released, counsel had an instanter subpoena issued but it was never served. When requesting the subpoena defendant counsel reserved his rights to object to the release of the witness depending on whether or not the subpoena was served. However, the record reveals that defense counsel did not request a recess or any other relief prior to the conclusion of the one-day trial.
In a motion for new trial the defendant raised the issue of the witness's release from the subpoena and caused another subpoena to be issued for him in connection with the hearing on the new trial motion. *787 This subpoena was not served and a continuance of the hearing was granted. Defense counsel did not request another subpoena and when the new trial motion again came on for hearing it was held without the appearance of Robeaux.
The record discloses that the defense did not know the whereabouts of the witness but that the state was able to contact him and serve him with subpoenas in this and other trials through a deputy sheriff who apparently maintained some contact with Robeaux.
The defendant contends that he was denied a fair trial due to the absence of this material witness and urges that his unavailability is attributable to unilateral action on the part of the prosecution.
The right of a defendant to compulsory process for obtaining witnesses in his behalf is embodied in both the federal and state constitutions as well as the statutory law of this state. U.S. Constitution Amendment 6; La. Const. Art. 1, § 16; LSA-C.Cr.P. Art. 731. The right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. State v. Latin, 412 So.2d 1357 (La.1982).
It has been held that an accused cannot claim that he was denied the right to compulsory process for obtaining witnesses where the defense did not seek to subpoena the witness. Beach v. Blackburn, 631 F.2d 1168 (U.S. 5th Cir.1980). Here, the defense did not subpoena this witness until after trial had begun. No specific relief was sought other than to request the issuance of a subpoena, which was done. There is no showing that the state prevented service of the subpoena or failed to attempt service thereof.
In State v. Hogan, 372 So.2d 1211 (La.1979) and 404 So.2d 488 (La.1981), a drug conviction was reversed on the basis that the defendant was unable to obtain the police informant as a witness in order to support a defense of entrapment. In that case the court found that the defendant had exercised due diligence in trying to obtain the witness's presence and except for the actions of the state, the witness would have appeared. In the instant case the failure of the defense to issue a subpoena for Robeaux' presence prior to trial and the failure to issue a second subpoena after being granted a continuance at the first hearing on the motion for new trial cannot be said to be an exercise of due diligence. There was no showing that the witness was made unavailable due to the suggestion, procurement, or negligence of the state and, therefore, the state's actions did not contribute substantially to the witness's failure to appear. Furthermore, particularly as it relates to the motion for new trial, there has been no showing as to what testimony the witness might give which would be favorable to the defendant and which would indicate the possibility of a different result if the witness were to testify. We find no prejudicial error related to the absence of the witness Robeaux.
Defendant contends that the action of the state in regard to this witness was accentuated by the later failure of the trial court to give a proper instruction to the jury in accordance with LSA-R.S. 15:432. The defense requested the following instruction: "A presumption arises that evidence under the control of a party and not produced by him was not produced because it would not have aided him." The trial court gave that instruction but added "However, this presumption does not arise if the witnesses are equally available to both the state and the defense for then the evidence is not under the control of either party." The trial court noted during argument over the instruction that whether the witness was under the state's control, or the defendant's control, or joint control, or under the control of neither, will be a question for the jury to decide.
In State v. Simms, 381 So.2d 472 (La.1980), it was held that the presumption does not arise if the witness not presented is equally available to both the state and the defendant. Accordingly, the instruction as given was a fair statement of the *788 applicable law. The jury was properly charged with regard to the absence of a witness and what presumptions or inferences could be drawn under what circumstances. It then became a matter for the jury to determine in light of the evidence and the proper charge as given.
These assignments of error are without merit.
Assignments of Error Nos. 5, 7, and 8
These assignments of error deal with the alleged failure on the part of the state to make disclosure of information as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, the defense complains of the failure to disclose the existence of a taped conversation made on the date of one of the drug transactions which showed the presence of another party and to disclose information about alleged misconduct on the part of the confidential informant, John Robeaux.
The due process clause of the Fourteenth Amendment of the United States Constitution requires the disclosure upon request of evidence which is favorable to the accused where the evidence is material to guilt or to punishment. Brady v. Maryland, supra. This rule has been expanded to include evidence which impeaches the testimony of a witness, where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
The defense knew of the existence of the tape and knew of the existence of the witness, Robeaux. Robeaux did not testify and, therefore, any evidence that would tend to impeach him, if such existed, would not be relevant or material. Whether or not the tape contained any information that was favorable to the defense is at best speculative and was not such that the state could be expected to draw a conclusion that the evidence may or may not be considered favorable to the defense. Since it is necessary for the defense to establish the evidence's favorable character and its materiality as well as showing that it was suppressed by the prosecution, it does not appear that in this instance a violation of the Brady rule occurred. Monroe v. Blackburn, 607 F.2d 148, rehearing denied 610 F.2d 818, cert. denied 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (U.S. 5th Cir. 1979).
These assignments lack merit.
Assignment of Error No. 6
The defendant urges that the trial court erred when it allowed Officer Joey Davidson to offer testimony as to his identification of the voice of the defendant as it appeared on certain tape recordings, when the identification was not predicated upon his previous knowledge of the defendant or the sound of his voice. The testifying officer monitored the receiving device involved in the taped surveillance of the defendant and identified the voice of the defendant on the tape based on his knowledge of the defendant's voice gained from conversations with the defendant after he was arrested.
Voice identification is a problem of authentication rather than a problem of a lay witness's competency to identify a voice. See State v. Hennigan, 404 So.2d 222 (La.1981). Sufficient authentication can be established by circumstantial evidence pointing to the unseen speaker's identity or by testimony of a witness familiar with the speaker's voice. Authentication based on familiarity with the speaker's voice can be gained subsequent to the communication. McCormick on Evidence, § 226, (2d Ed.1972).
Here, the officer heard the voices of the persons involved in the drug transaction while the tape was being recorded. He later spoke on several occasions to the defendant during his term of incarceration while he was awaiting trial. These circumstances afforded a sufficient foundation for the officer to testify from his own knowledge and familiarity with the defendant's voice that the voice on the tape was that of the defendant.
This assignment of error lacks merit. *789 For the reasons assigned, the defendant's convictions and sentences are affirmed.
Affirmed.