COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Senior Judge Hodges
Argued at Alexandria, Virginia


SHANE EDWARD DEAN
                                        OPINION BY
v.    Record No. 0422-98-4          JUDGE WILLIAM H. HODGES
                                        JUNE 15, 1999
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                    J. Peyton Farmer, Judge

        Elwood Earl Sanders, Jr., Appellate Defender
        (Public Defender Commission of Virginia, on
        briefs), for appellant.

        Robert H. Anderson, III, Assistant Attorney
        General (Mark L. Earley, Attorney General, on
        brief), for appellee.


     Shane Edward Dean (appellant) appeals his convictions for

robbery and use of a firearm in the commission of a robbery.  On

appeal, he argues that the trial judge erred in refusing to

admit certificates of analysis because one certificate was not

filed with the circuit court in compliance with Code § 19.2-187;

and appellant failed to prove a proper chain of custody for

another certificate of analysis where, without notification to

appellant, the Commonwealth released witnesses under subpoena

who were necessary to prove the chain of custody.  Assuming,

without deciding, the trial judge erred in refusing to admit the

certificates of analysis, we hold that the errors were harmless.

FACTS

Appellant was convicted of robbing a Popeye's restaurant on September 1, 1995. Sidney Turner, the assistant manager of the restaurant at the time of the robbery, testified that appellant entered the restaurant at about 11:00 a.m., when no other customers were in the restaurant. Turner greeted appellant as he walked by the counter and entered the restroom. Turner testified that he got a "very good look" at appellant when appellant first entered the restaurant.

Appellant exited the restroom wearing a bandanna covering his face from the nose downward. Appellant held a gun, and he said to Turner, "This is a holdup. Get in the office, and get the safe open." Appellant removed cash from the safe and put it in his pants pockets. Appellant directed two other employees to bring him the cash drawers from the cash registers, and appellant removed cash from those drawers. Appellant ordered the employees into the freezer, and appellant shut the freezer door.

James Harris testified that he gave appellant a ride to Popeye's on the day of the robbery, and appellant asked Harris to wait for him as appellant entered the restaurant. Appellant exited Popeye's after he was in the restaurant for about five minutes. Appellant entered Harris's car wearing a bandanna around his neck, stuffing money into his pants, and carrying a

2

gun.  Appellant told Harris, "[J]ust go ahead and drive."

Harris sideswiped a car as they drove away.  The driver of the

sideswiped car later identified Harris as the driver of the car.

The driver also stated that she saw a passenger in Harris's car,

but she did not identify appellant as the passenger.

Appellant testified that he did not rob Popeye's, but he

could not remember where he was on September 1, 1995.

Turner testified that he viewed appellant's face during the

entire incident, which, according to Turner, lasted about seven

to ten minutes.  Turner also stated that he stood within arm's

length of appellant during part of the incident.  More than

eight months after the robbery, Turner identified appellant's

photograph from a photo array.  Turner testified at trial that

he was "absolutely" sure that appellant was the robber.

Detective William Bowler testified that another employee of

Popeye's looked at the photo array after the incident.  The

employee thought appellant's eyes and nose looked like the

robber's, but he did not positively identify appellant's picture

as that of the robber.

Police investigators obtained fingerprint evidence from the

crime scene, from Harris's car, and from some recovered cash.

They submitted the evidence to a laboratory for analysis.  A

certificate of analysis dated March 14, 1997 ("March 14

certificate") was filed with the circuit court.  This

3

−

certificate indicated that the investigators recovered five latent fingerprints and four latent palm prints of value. None of the latent fingerprints matched the submitted fingerprints of appellant. The certificate further indicated that "inked palm prints" were needed to complete the examination. The certificate stated that "an automated fingerprint search was conducted," but no identification was made.

When appellant moved to admit the March 14 certificate into evidence, the Commonwealth objected on the ground that the chain of custody of the fingerprint evidence was not sufficiently proven. The trial judge ruled that the March 14 certificate was inadmissible based on the Commonwealth's ground for objection.

The laboratory performed further fingerprint and palm print analysis as reported in a certificate of analysis dated August 7, 1997 ("August 7 certificate"). This certificate also indicated that the latent fingerprints did not match appellant's fingerprints. The certificate reported that the latent palm prints were compared "insofar as possible" with the submitted palm prints of appellant. The certificate stated, "In order for a conclusive comparison to be made, [a] fully recorded set of inked palm prints . . . should be submitted." The August 7 certificate also indicated that no identification was made from an automated fingerprint search.

The August 7 certificate was not filed with the circuit court prior to the trial in accordance with Code § 19.2-187. When appellant moved to admit the certificate into evidence, the Commonwealth objected on the ground that it had not been timely filed with the circuit court. The trial judge ruled that the certificate was inadmissible based on the Commonwealth's ground for objection.

### ANALYSIS

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "A defendant is entitled to a fair trial but not a perfect one." Lutwak v. United States, 344 U.S. 604, 619 (1953). "'[A]n erroneous evidentiary ruling does not require reversal of a criminal conviction where the error is harmless.'" Brown v. Commonwealth, 25 Va. App. 171, 182, 487 S.E.2d 248, 253 (1997) (en banc) (citation omitted).

> "In Virginia, non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.' '[A] fair trial on the merits and substantial justice' are not achieved if an error at trial has affected the verdict. . . . An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function,

5

> that, had the error not occurred, the
> verdict would have been the same."

Id. at 183, 487 S.E.2d at 254 (quoting Lavinder v. Commonwealth,

12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc)

(alteration in original) (quoting Code § 8.01-678)).

Appellant claimed by way of defense that he did not commit the crime, and he challenged the identification evidence presented by the Commonwealth.  Thus, identification of the robber was an issue in the case.  However, the Commonwealth presented overwhelming evidence that appellant committed the crime.  Therefore, assuming, without deciding, that the trial judge erred in refusing to admit the two certificates, we hold that the verdict would have been the same.

Even without the fingerprint evidence, the Commonwealth presented other direct evidence to prove that appellant was the criminal agent.  Turner positively identified appellant as the robber.  Harris's testimony placed appellant at the scene of the crime on the date the crime was committed.  Furthermore, Harris saw appellant with a gun, a bandanna, and cash after appellant exited the restaurant.  Thus, the certificates of analysis indicating that the recovered fingerprints "were not identified" with appellant's fingerprints were inconsequential in light of the other evidence presented.

Moreover, from the evidence presented, it appears that appellant may have only touched the freezer door or handle and the bathroom door in the restaurant. The objects would in all likelihood have contained fingerprints from numerous other persons. Indeed, with regard to the fingerprints analyzed from the restaurant, a business open to the public, one would expect to find fingerprints from many persons. The fact that the recovered fingerprints, which were found in a place of public access, were not identified as appellant's fingerprints does not tend to prove that appellant did not commit the crime.

Furthermore, the evidence showed that the employees opened the safe and handled the cash drawers, so it is possible that appellant left no recoverable fingerprints at the scene.

The two certificates of analysis also indicate that fingerprints were recovered and analyzed from some of the recovered cash. However, the same analysis applies to these prints--fingerprints from numerous other persons would be expected to be found on cash. The fact that appellant's fingerprints were not found on the cash was inconsequential.

In addition, the March 14 certificate indicated that a set of appellant's inked palm prints was needed to complete the examination. The August 7 certificate indicated that the laboratory was still unable to complete "a conclusive comparison" of the latent palm prints and that "a fully recorded

set of inked palm prints" should be submitted. Thus, the certificates concerning the palm print analyses were actually inconclusive, not exculpatory, and "did not materially contradict the testimony of the Commonwealth's . . . witnesses, which alone provided evidence sufficient to support appellant's conviction." Scott v. Commonwealth, 25 Va. App. 36, 44, 486 S.E.2d 120, 123 (1997).

In addition, appellant was not prejudiced by the trial judge's refusal to admit the certificates because appellant argued to the jury in his closing argument that the Commonwealth presented no fingerprint evidence linking him to the robbery. Accordingly, it plainly appears from the record and evidence presented that appellant received a fair trial on the merits and substantial justice was reached.

Appellant also argues that he was denied a fair trial because the Commonwealth, without informing appellant, released witnesses who could have testified concerning the chain of custody of the evidence analyzed in the March 14 certificate. Appellant did not issue subpoenas for the witnesses.

"The defendant's right to compulsory process is the right to request subpoenas for witnesses and the right to have the requested subpoenas issued by the court. However, a defendant cannot claim that he was denied the right to compulsory process for obtaining witnesses on his behalf where he does not seek to

subpoena the witnesses." <u>State v. Specich</u>, 473 So. 2d 380, 386 (La. Ct. App. 1985).

In <u>State v. Green</u>, 448 So. 2d 782 (La. Ct. App. 1984), the state subpoenaed a witness. Prior to trial, the prosecutor released the witness from the subpoena. The defendant contended the trial court erred in allowing the prosecution to excuse from subpoena a material witness without the knowledge and consent of the defendant. <u>See</u> <u>id.</u> at 786. However, the Court of Appeals of Louisiana held that the defendant's failure to issue a subpoena for the witness prior to trial and after being granted a continuance did not show "an exercise of due diligence." <u>Id.</u> at 787. The Court further found that the defendant did not show that "the witness was made unavailable due to suggestion, procurement, or negligence of the state . . . ." <u>Id.</u> Therefore, the state's actions "did not contribute substantially to the witness's failure to appear." <u>Id.</u> <u>See</u> <u>also</u> <u>Meek v. State</u>, 636 So. 2d 543 (Fla. Dist. Ct. App. 1994) (state attorney has authority to release witnesses from a grand jury subpoena or investigative subpoena issued by the state).

Here, appellant made no showing that the witnesses were made unavailable due to any action by the Commonwealth. The attorney for the Commonwealth subpoenaed the witnesses prior to trial. The attorney for the Commonwealth had authority to issue the subpoenas pursuant to Code § 19.2-267 and Rule 3A:12.

However, at no time, either before or during the trial, did appellant issue subpoenas for these witnesses. Moreover, when the issue arose at trial, appellant did not ask for a continuance in order to obtain the presence of the witnesses at the trial. Therefore, appellant failed to exercise due diligence in obtaining the presence of the witnesses at trial. Accordingly, the release of the witnesses by the Commonwealth did not contribute to the witnesses' failure to appear and did not deprive appellant of any right to subpoena the witnesses as his own witnesses. Rather, appellant's failure to issue subpoenas for the witnesses resulted in their absence. See Brame v. Commonwealth, 252 Va. 122, 133-34, 476 S.E.2d 177, 183 (1996) (holding that where defendant had the opportunity to secure a witness' testimony, but made no effort to procure the presence of the witness, defendant had no standing to complain that he was denied the right to cross-examine the witness when the witness did not testify).

For the foregoing reasons, we affirm the convictions.

Affirmed.