**John ANDERSON, Appellant,**

v.

**COMMONWEALTH OF KENTUCKY, Appellee.**

**No. 1999–SC–0176–MR.**

Supreme Court of Kentucky.

Sept. 27, 2001.

Rehearing Denied Jan. 17, 2002.

discovered evidence. We take each issue in turn.

Shannon Dupree Smith, Assistant Public Advocate, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Attorney General of Kentucky, Michael G. Wilson, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

STUMBO, Justice.

This appeal is based on a jury verdict from the Wayne Circuit Court convicting John Anderson of two counts of first-degree rape, four counts of first-degree sodomy, and one count of sexual abuse of his stepdaughter, C.S.B. The victim testified that Appellant began having sexual relations with her in 1992 when she was ten years old. Anderson was sentenced to twenty years for each rape charge, twenty years for each count of sodomy, and five years for the sexual abuse charge, all to run concurrently. He appealed to this Court as a matter of right.

Appellant raises four issues on appeal. First, Anderson argues that the trial court erred by not granting Defendant's motion for a continuance. Second, Appellant asserts that evidence showing the victim's past sexual experience was erroneously excluded under the rape shield law. Third, Appellant claims he was denied due process of law when the trial court allowed the Commonwealth to amend the indictments at the close of the Commonwealth's case-in-chief. Last, Anderson argues that the trial court erroneously refused to grant a motion for judgment notwithstanding the verdict, a motion for new trial, and a motion for a new trial based on newly

## I. CONTINUANCE

The facts regarding this argument are somewhat convoluted. On July 1, 1997, the trial judge entered a standard discovery order stating the Commonwealth was to provide discovery materials, including exculpatory evidence, to defense counsel. Several weeks later, the Commonwealth complied with this order. In January of 1998, the defense moved for supplemental discovery based on the prior discovery provided. The defense asked specifically for all hospital records of the victim and for any reports done by Dr. Artie Ann Bates. The defendant discovered that an examination was performed on the victim by Dr. Bates by reading through the CHR records provided by the original discovery order, but no report had been provided with the discovery.

On February 17, 1998, the trial court heard Defendant's motion, and made a docket entry stating, "Order to be entered directing that records, tapes and doctor's reports be sent to the court for a review of same. Trial date has previously been set for June 22, 1998 ." No such order, however, was entered. The trial court instead entered an order, on May 22, 1998, directing the Commonwealth to submit *to the defense* (not to the court for an in-camera review) a list of all places the victim had been hospitalized. On June 12, 1998, the Commonwealth moved to set aside the May 22, 1998 order based on the fact that it did not follow the spirit of the February 17, 1998 docket entry. The Commonwealth asserted defense counsel should have submitted an order to the court requiring the specific agencies where C.S.B. was hospitalized to deliver the records to the court for an in-camera review. In response, defense counsel argued that she

had no way of knowing to which agencies to distribute such an order, since the Commonwealth had not revealed where the victim had been hospitalized until the morning of June 12, when the Commonwealth's Attorney had telephoned her. During the same conversation, the Commonwealth's Attorney also informed defense counsel that he did not have the report of Dr. Bates in his possession, but would fax it to defense counsel as soon as he received it. He did fax the report to defense counsel—at 5:30 p.m. As this was a Friday, and defense counsel was out of town at a training seminar, she was not able to review the report until Thursday, June 18th.

On June 18th, defense counsel filed a motion for continuance, claiming Dr. Bates' report was illegible, but from what she could tell it contradicted the findings of Dr. Cunningham, another doctor whose report had been provided with the original discovery. Hence, she argued, her trial strategy had changed. Despite her motion, the trial began on June 22, 1998, and defense counsel orally supplemented her motion for continuance, but the motion was denied. The trial went on as planned, and the Commonwealth presented its entire case-in-chief. Defense counsel received the hospital records at the end of the first day of trial, whereupon it was discovered that the victim had told a nurse that she had engaged in sexual intercourse with someone other than the defendant. Defense counsel renewed her motion for a continuance on the second day of trial, based on the fact that she had just received records that may contain exculpatory evidence. The trial court again denied her motion.

Appellant argues that the trial court abused its discretion by not granting Defendant's motion for a continuance. Appellant asserts he met all of the factors articulated in *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694 (1994). Further, Appellant argues that the Commonwealth failed to disclose exculpatory information in a timely manner, and the trial court should have granted a continuance to give defense counsel adequate time to examine the evidence. After a thorough review of the record, we agree.

In *Eldred*, this Court set out seven factors that should be considered by a trial court when deciding whether to grant a continuance:

(1) The length of delay;

- (2) Whether there have been any previous continuances;

(3) The inconvenience to the litigants, witnesses, counsel, and the court;

(4) Whether the delay is purposeful or caused by the accused;

(5) The availability of competent counsel, if at issue;

(6) The complexity of the case; and

(7) Whether denying the continuance would lead to any identifiable prejudice.

*Id.* at 699.

In the case at bar, Defendant moved for a 60–day continuance, the same length of time we found to be minimal in *Eldred. Id.* Further, this case was barely a year old when the trial began, this was the first continuance sought, and a two-month continuance would not have been a substantial inconvenience to any of the parties. The delay here was not purposeful, or caused by the accused. In fact, one may argue the delay was caused by the Commonwealth in not timely turning over evidence to the defense. Further, counsel for the defense stated on the record that it would be difficult to be an effective counsel because she did not receive the discovery at the proper time. In addition, this case was complex because of the suspect discovery practices that occurred, and the defen-

dant clearly suffered prejudice from the denial of the continuance.

■ We hold the trial court abused its discretion in not allowing the continuance requested by the defendant. Accordingly, the case is remanded for a new trial.

## II. RAPE SHIELD LAW

Appellant asserts that evidence showing the victim's past sexual experience was erroneously excluded under the rape shield law. The victim was examined by a doctor at the request of CHR. Dr. Bates, the examining physician, testified at trial that C.S.B. had a "loose vaginal opening" and concluded that C.S.B. had previously been penetrated, leaving the jury to believe that it must have been the defendant who penetrated her. As stated, *infra*, defense counsel discovered, at the end of the first day of trial, a report in which the victim told a nurse that she had previously had sex with another boy. The defense tried to cross-examine C.S.B. regarding this, but the Commonwealth objected, citing KRE 412, the rape shield law. KRE 412 holds that evidence of a victim's sexual experience is not admissible unless it is at issue whether the defendant is the source of an injury:

(a) Reputation or opinion. Notwithstanding any other provision of law, in a criminal prosecution under KRS Chapter 510 or for attempt or conspiracy to commit an offense defined in KRS Chapter 510, or KRS 530.020, reputation or opinion evidence related to the sexual behavior of an alleged victim is not admissible.

(b) Particular acts and other evidence. Notwithstanding any other provision of law, in a criminal prosecution under KRS Chapter 510, or KRS 530.020, or for attempt or conspiracy to commit an offense defined in KRS Chapter 510, evidence of a victim's past sexual

behavior other than reputation or opinion evidence is also not admissible, unless such evidence is admitted in accordance with subdivision (c) and is:

(1) Evidence of past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury;

(2) Evidence of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which an offense is alleged; or

(3) Any other evidence directly pertaining to the offense charged.

The trial judge sustained the Commonwealth's objection on the grounds that a loose vaginal opening was not an injury under KRE 412(b)(1). Since the adoption of KRE 412, we have not considered this issue, and we do not believe that we have to reach that question here. Under KRS 510.145, Kentucky's rape shield law prior to the adoption of KRE 412 in 1992, a victim's prior sexual history was inadmissible, unless it was considered "evidence directly pertaining to the act." That language is very similar to the exception found in KRE 412(b)(3), "[a]ny other evidence directly pertaining to the offense charged." In *Barnett v. Commonwealth*, Ky., 828 S.W.2d 361 (1992), a case decided under KRS 510.145, we held evidence of sexual conduct with someone other than the accused was relevant to show an alternative explanation for a doctor's findings. We stated:

Upon review of the arguments of counsel, their briefs, and the video transcript of the trial, it is apparent that appellant

was convicted based on the child's testimony and the corroborating medical testimony of the examining physician. Appellant was required to defend himself without the benefit of evidence which could have explained the expert's physical findings.

*Id.* at 363.

■ The situation at bar is very similar. The victim was a child, and unlikely to have any sexual partners. The only partner identified to the jury was Appellant. Therefore, testimony from a doctor that C.S.B. had a "loose vaginal opening" would lead the jury to believe that Appellant must have been the one who penetrated C.S.B. and caused her vaginal opening to be loose. Therefore, under *Barnett,* it appears that the evidence of the victim's past sexual encounter is relevant to provide an explanation for why she had a loose vaginal opening, and rebut the inference of guilt. This is directly "pertaining to the offense charged," as required by KRE 412(b)(3). As a result, we find that the trial court erred in refusing to let defense counsel question C.S.B. about her prior sexual experience. We further note that, on avowal, C.S.B. denied making the statement to the nurse regarding her prior sexual history. If, on remand, she again denies making the statement, we want to make it clear that the report may also be admitted as a prior inconsistent statement under KRE 801A(a)(1), assuming it is properly authenticated per KRE 902 and satisfies the requirements of KRE 803(6).

■ Having found that this limited statement to a nurse should be allowed, we find it necessary to comment on the breadth of the Rape Shield law. As we stated in *Barnett,* "[t]he purpose of the Rape Shield Statute . . . is to insure that [the victim] does not become the party on trial through the admission of evidence that is neither material nor relevant to the charge made." *Barnett,* 828 S.W.2d at 363. We stand by this sound principle, and by no means want to expand the law to admit more evidence than necessary to allow a defendant a fair trial. The exception here is limited to the factual situation of this case. The victim is a child, likely to be chaste, and the Commonwealth introduced medical testimony that she had a "loose vaginal opening caused by penetration." Therefore, in order for the defendant to rebut the inference that he is the person who caused the "loose vaginal opening," he must be permitted to introduce testimony that C.S.B. made a statement to a nurse that she had sex with another boy. On this basis we likewise reverse for a new trial.

## III. AMENDED INDICTMENTS

Appellant argues that he was prevented from preparing and presenting an adequate defense because the trial court allowed the Commonwealth to amend Wayne County Indictment No. 97–CR–00071 from "on or about 1994" to "on or about 1992," and Wayne County Indictment Nos. 97–CR–00072, –00073, and–00074 from reading "on or about April 26, 1997" to "on or about April, 1997." Several times throughout C.S.B.'s testimony, she stated that the abuse by her stepfather began in 1994 "when she was ten years old." However, C.S.B. was actually ten years old in 1992. The trial court allowed the Commonwealth to amend the indictment to say "on or about 1992." RCr 6.16 allows an indictment to be amended if there will be no prejudice to the defendant:

The court may permit an indictment, information, complaint or citation to be amended any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. If justice requires, however, the court shall

grant the defendant a continuance when such an amendment is permitted.

■ The amendments to the indictments here did not charge Appellant with any additional or different offenses, it simply changed the dates. The Defendant maintains that these events never occurred, whether in 1992 or 1994, or whether on April 26 or April 17. As such, any sort of alibi defense was not prejudiced by an amendment to an indictment. Further, these amendments were made before Appellant's case-in-chief. Appellant argues that changing the dates on the indictment "left the defense unprepared." Appellant's Brief at 26. If the defendant felt such an amendment was prejudicial, though it is our conclusion that it was not, the defense could have moved to continue the trial in an effort to revamp his defense.

## IV.  MOTION FOR NEW TRIAL

We are troubled by the events which took place in this case regarding the subpoena of Dr. Robert Cunningham. Dr. Cunningham was served with a subpoena issued at the Commonwealth's request. During jury selection on the first day of trial, the Commonwealth advised the court that Dr. Cunningham was to be called as a witness. It was not until the Commonwealth rested its case that the defense realized Dr. Cunningham was not going to testify.

Further, there is an affidavit from the doctor, claiming he received a phone call Wednesday prior to trial informing him that the defendant had pled guilty and that he was released as a witness. Defendant had, in fact, never pled guilty. Appellant intimates that the Commonwealth released Dr. Cunningham from his subpoena in an intentional effort to sabotage the defendant's case. The defense was unsuccessful in serving its own subpoena on Dr. Cunningham, and as a result of the Common-

wealth releasing him, was unable to present his testimony at trial. The defense counsel received information, after the trial, that the prosecutor admitted to such behavior. Defendant filed a Motion for a New Trial Based on Newly Discovered Evidence and the trial judge heard extensive testimony. During the hearing, Dr. Cunningham testified in direct contradiction to the assistant Commonwealth's Attorney. As a result, one of them was indubitably lying. Despite this, the trial judge denied the motion, stating that Dr. Cunningham's testimony would not have changed the verdict, as it was not entirely contradictory to Dr. Bates' testimony.

At trial, Dr. Bates testified that there was a "reasonable medical probability that [C.S.B.] had been penetrated." Dr. Cunningham's report stated that "[t]oday's exam neither rules in nor rules out previous penetration." We believe Dr. Cunningham's testimony could have refuted the findings of Dr. Bates. There is further evidence that C.S.B. gave a different history to Dr. Cunningham, which could have also been used to impeach the alleged victim.

■ However, after reviewing the hearing on Defendant's Motion for a New Trial Based on Newly Discovered Evidence, we believe that the trial judge did not abuse his discretion in declining to grant a new trial. It is clear that in order to warrant a new trial, the defendant must make a showing of reasonable certainty that a different verdict would have been reached had the evidence been presented. *Carwile v. Commonwealth*, Ky.App., 694 S.W.2d 469, 470 (1985). We believe that Dr. Cunningham's testimony, if it had been presented at trial, may have met this burden. However, in this case, the question we really have to answer is whether this evidence was "newly discovered." It is clear that the defense had both reports before

trial. The Court of Appeals has held, and we agree, that to succeed on a Motion for a New Trial Based on Newly Discovered Evidence, "the defendant must show that the evidence was discovered *after* the trial." *Id.* at 470. It is by defendant's own admission that we know he had both reports in his possession before trial. The evidence the defense claims to be newly discovered is that the Commonwealth's Attorney deceitfully kept a witness from testifying. Even if true, this does not fit the definition of newly discovered evidence.

Though we decline to reverse on this issue, because the Commonwealth's release of a witness is not "newly discovered evidence," we find it appropriate to comment on the behavior of the Commonwealth's Attorney in this case. It appears that he knew the defense was relying on the Commonwealth's subpoena and purposefully did not disclose that he intended to, or had already, released Dr. Cunningham. In its own defense, the Commonwealth argues that the defense cannot rely on the Commonwealth's subpoenas, and cites *Commonwealth v. Calloway*, Ky., 737 S.W.2d 691, 693 (1987) for this dubious proposition. In *Calloway*, however, the witness had not been subpoenaed. The defendant simply relied on the Commonwealth's Attorney's promise to make the witness available. Unfortunately, the witness "absquatulated," *id.* at 692, and the Commonwealth was unable to produce him. That is quite different from a situation where, as here, the witness was subpoenaed and was available for trial, but was excused *sua sponte* by the party who had requested the subpoena.

▮ Witnesses are not subpoenaed by parties, but by the circuit court clerk. RCr 7.02(1). Indeed, the subpoena issued for Dr. Cunningham was issued by the Clerk of the Wayne Circuit Court, albeit at the request of the Commonwealth. We believe that once subpoenaed, the witness is answerable to the court and can only be excused by the court. In affirming a contempt order against an absent subpoenaed witness in *Otis v. Meade*, Ky., 483 S.W.2d 161 (1972), we held that "the subpoena created a continuing obligation on his part to be available as a witness until the case was concluded or *until he was dismissed by the court.*" *Id.* at 162 (emphasis added).

Any other view taken would require the issuance of multiple subpoenas to a witness whose testimony is deemed material by more than one party. That means more work for the parties to request subpoenas for witnesses already subpoenaed by other parties, more work for the clerk to issue the extra subpoenas, more work for the sheriff to serve the extra subpoenas, and more inconvenience for the witness who will be interrupted from his own business to be served with multiple subpoenas to appear at one trial. Similar rules apply in civil cases. CR 45.01; CR 45.06.

For the reasons stated above, this case is reversed and remanded to the Wayne Circuit Court for a new trial on all charges in accordance with this opinion.

LAMBERT, C.J.; COOPER and JOHNSTONE, JJ., concur.

KELLER, J., dissents by separate opinion, with GRAVES and WINTERSHEIMER, JJ., joining that dissent.

KELLER, Justice, dissenting.

I respectfully dissent from the majority opinion and I would affirm Anderson's convictions. In my opinion, the trial court did not err either by denying Anderson's request for a continuance or by preventing defense counsel from questioning the child victim about her prior sexual history. Ac-

cordingly, I write separately to express my views concerning Parts I and II of the majority opinion. Although I concur with the majority's Part IV conclusion that the trial court did not abuse its discretion in denying Anderson's motion for a new trial, I disagree with the majority's gratuitous discussion concerning the release of witnesses under subpoena. Accordingly, I write separately concerning the Part IV issues to express my opinion that the Commonwealth had the authority under our rules of procedure to release Dr. Cunningham from its subpoena.

## I. CONTINUANCE

Continuances are the bane of a trial court's efforts to maintain a current trial calendar, and, if freely granted, will quickly lead to an unmanageable backlog of cases. Although the majority appears to believe otherwise,[1] trial courts have only a limited number of available trial dates, and postponements can wreak havoc on a trial court's calendar. The reshuffling required by an eve-of-trial continuance typically cre-

ates a "domino effect" which sacrifices at least two trial dates—the original trial date, which can no longer be reassigned, and the date to which the continued matter is rescheduled—and delays justice for other litigants before the court.

Recognizing that this Court has no business micro-managing docket control in the trial courts, we have held that "[i]t is fundamental for a judge to have the right to decide when it is appropriate to grant a continuance in any given case."[2] Accordingly, "[t]he granting of a continuance is always in the sound discretion of the trial judge, and unless it appears that he has abused that discretion, his determination will not be disturbed on appeal."[3] These principles are embodied within RCr 9.04, which governs the granting of continuances:

> The court, upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial. A motion by the defendant for a postponement on account of the absence of

1. The majority's rhetoric is telling. *See* Majority Opinion at 63 S.W.3d 135, 138 (2001) ("[T]his case was *barely* a year old when the trial began ...." *Id.* (emphasis added)). Furthermore, the majority's characterization of a sixty-day continuance as "minimal" on the basis of language from *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694 (1994) ignores no less than four passages from that opinion which base that characterization, as well as the final result, on the fact that *Eldred* was tried as a capital case. *See Id.* at 699 ("We also note that Appellant's case was a capital case, with the death penalty possible, which makes the case qualitatively different." *Id.*); *Id.* ("The length of delay in this case was only sixty days, which is rather minimal, *particularly in a death penalty case.*" *Id.* (emphasis added)); *Id.* ("Second, the continuance was the *first* sought by anyone, which distinguishes ... most other death penalty cases, where numerous continuances are the rule rather than the exception." *Id.*); *Id.* at 700

("This case was a death penalty case, which factor alone makes it more complex." *Id.*).

2. *Brutley v. Commonwealth*, Ky., 967 S.W.2d 20, 23 (1998).

3. *Estep v. Commonwealth*, Ky., 663 S.W.2d 213, 216 (1983). *See also Johnson v. Commonwealth*, Ky., 12 S.W.3d 258, 265 (1999) ("Whether to grant a continuance is generally within the sound discretion of the trial court." *Id.*); *Pickard Chrysler, Inc. v. Sizemore*, Ky. App., 918 S.W.2d 736, 740 (1995) ("It is well established that a motion for postponement of trial lies within the sole discretion of the trial court." *Id.*); *Dishman v. Commonwealth*, Ky., 906 S.W.2d 335, 340 (1995) ("The trial judge has broad discretion in either granting or refusing a continuance. A reviewing court will not reverse a criminal conviction unless the trial court abused its discretion in the denial of a continuance. In order to obtain a continuance, a criminal defendant must show sufficient cause." *Id.* (citations omitted)).

evidence may be made only upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it. If the motion is based on the absence of a witness, the affidavit must show what facts the affiant believes the witness will prove, and not merely the effect of such facts in evidence, and that the affiant believes them to be true. If the attorney for the Commonwealth consents to the reading of the affidavit on the hearing or trial as the deposition of the absent witness, the hearing or trial shall not be postponed on account of the witness's absence. If the Commonwealth does not consent to the reading of the affidavit, the granting of a continuance is in the sound discretion of the trial judge.[4]

I strongly disagree with the majority's belief that the trial court abused its discretion when it denied Anderson's continuance motions. After engaging in its own factfinding, and without regard to the contrary beliefs of the trial court, the majority finds that the criteria outlined in *Eldred v. Commonwealth*[5] warranted a continuance. This appellate "Monday-morning quarterbacking" flies in the face of the discretion we allegedly give trial courts in such matters and appears to authorize a sixty-day "freebie" continuance in any criminal case. In my opinion, a careful review of the record refutes counsel's unsubstantiated claims that Anderson suffered prejudice from tardy discovery.

In *Eldred*, this court identified seven factors which trial courts should consider when determining, in the exercise of their discretion, whether sufficient cause exists to grant a continuance.[6] In one paragraph of conclusory statements without supporting analysis or even a passing mention of the appropriate standard of review, the majority finds that all of the *Eldred* factors supported a continuance. While a couple of these factors are largely objective (e.g., the length of delay and whether there have been any previous continuances), the remainder of the factors involve value judgments by the trial court, and we should not disturb those judgments unless they are clearly erroneous and unsupported by substantial evidence.[7]

I believe the majority's findings as to the *Eldred* factors are inappropriate given the standard of review and also highly suspect. In *Eldred*, the Court instructed trial courts to consider "the inconvenience to the litigants, witnesses, counsel, and the court."[8] Today's majority ignores all but the first of these when stating, without any indication from the record that the Court's calendar would accommodate the proposed continuance, "a two-month continuance would not have been a substantial inconvenience to any of the parties." The majority's findings concerning *Eldred* factors (4), (5), and (6) explicitly repudiate the appropriate standard of review by engaging in a new type of "one may argue ..." review, address a factor which is relevant only when the continuance is requested in connection with trial counsel's request to withdraw,[9] and remove any doubt that the

4. RCr 9.04.

5. Ky., 906 S.W.2d 694 (1994).

6. *Eldred v. Commonwealth, supra* note 5 at 699.

7. *See Thurman v. Meridian Mutual Ins. Co.,* Ky., 345 S.W.2d 635, 639 (1961).

8. *Eldred v. Commonwealth, supra* note 5 at 699.

9. *Id.* at 700 n. 2 ("There is no issue in this case concerning Appellant's counsel, or any potential substitute counsel, as would arise if there were an attempt to withdraw by counsel on the eve of trial as a result of a breakdown

anointed result is driving the analysis by labeling a serious, but unexceptional-in-terms-of-preparation-required, child sex abuse case as "complex." The majority concludes by decreeing, with no more support than Appellant's naked allegation, that "the defendant clearly suffered prejudice from the denial of the continuance." Each of these conclusions flies in the face of the discretion this Court allegedly gives trial courts.

I find the trial court's denials of Anderson's motions to continue proper because I do not believe Anderson demonstrated "sufficient cause" to justify the continuances. The crux of Anderson's pretrial motion for continuance was the Commonwealth's Attorney's alleged failure to provide Dr. Bates's report to defense counsel in a timely fashion. However, the Commonwealth supplied the report to defense counsel within the time constraints outlined in the trial court's supplemental discovery order, and the report was faxed to defense counsel *the same day* that it was received by the Commonwealth's Attorney—*ten days prior to the scheduled trial.* Although defense counsel asserts that the faxed copy provided to the defense was not legible, counsel found Dr. Bates's findings clear enough to describe them to the Court five (5) days before trial when first moving for a continuance.

Anderson's trial counsel argued that an intervening out-of-town, three-day training seminar prevented her from reviewing the report until four days before the trial. Although the trial court initially heard the defense motion for supplemental discovery and orally ruled in favor of the defense four months before trial and entered a written order a full month before trial, defense counsel first raised this scheduling conflict in connection with Anderson's pretrial motion for a continuance. Neither

trial nor appellate counsel has ever articulated any reason why trial counsel could not prepare for this evidence between the end of the conference and the beginning of the trial. While Appellant asserts that he needed additional time to secure an expert witness to contradict Dr. Bates's results, we cannot help but notice that the defense made no effort to contact or subpoena Dr. Cunningham, who had already expressed his contrary findings in writing.

Nor do I believe that Appellant demonstrated "sufficient cause" to justify a continuance on the basis of the Commonwealth's tardy disclosure of C.S.B.'s medical records. Defense counsel informed the trial court on the record that she had reviewed these documents, and the court permitted counsel to recall witnesses and cross-examine them regarding matters found within these documents.

## II. RAPE SHIELD LAW

The practical effect of today's majority opinion is that *the protection of Kentucky's "Rape Shield Law" is no longer available to young victims!* Regardless of the majority's lofty declaration that they stand by the "sound principle" that the victim "does not become the party on trial through the admission of evidence that is neither material nor relevant to the charge made," the majority concludes that the trial court erred by failing to allow defense counsel to question C.S.B. regarding her past sexual behavior. In order to reach this result, the majority creates a new exception to KRE 412—*the age of the victim*—which paves the way for the widespread admission of immaterial and irrelevant evidence of children's past sexual behavior whenever any physical findings support the child victim's account.

of communications between counsel and          client." *Id.*).

KRE 412 incorporates the sound policy reasons supporting the reciprocal Federal Rule [10] and balances competing interests by "protect[ing] alleged victims of sex crimes against unfair and unwarranted assaults on character without depriving criminal defendants of evidence needed for a proper defense against charges involving such crimes." [11] KRE 412, therefore, generally prohibits evidence of an alleged sex crime victim's past sexual behavior unless the evidence meets one of the three exceptions set forth in subsection (b) of the rule. In my opinion, evidence that C.S.B. told a nurse that she had previously had sex with another boy does not fall within an exception.

Anderson's trial counsel argued to the trial court that the evidence was admissible under KRE 412(b)(1) as "evidence of past sexual behavior with a person other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury." [12] Although KRE 412(b)(1)'s "source of semen or injury" exception was the only basis upon which the defense argued for the admission of this evidence, the majority sidesteps this question of first impression [13] and instead finds this evidence admissible under KRE 412(3)'s residual exception for "any other evidence directly pertaining to the offense charged." [14] Relying on Barnett v. Commonwealth, [15] which interpreted the exception's broader statutory predecessor, [16] the majority con-

10. *See* 2 Weinstein's Federal Evidence § 412.02[4] (2nd Ed.2001):

> [T]he rationale underlying [FRE 412] is to prevent the victim, rather than the defendant, from being put on trial. The low incidence of reports of rape ... was felt to stem from the victim's reluctance to be cross-examined about her sexual past as was permitted under the common-law approach.
> *Id.*

11. 1992 Kentucky Evidence Rules Study Committee Commentary to KRE 412. *See also Barnett v. Commonwealth*, Ky., 828 S.W.2d 361, (1992) ("The purpose [for] generally prohibiting evidence of prior sexual conduct of a complaining witness is to insure that the witness does not become the party on trial through the admission of evidence that is neither material nor relevant to the charge made." *Id.*).

12. KRE 412(b)(1).

13. *See* Robert G. Lawson, *Kentucky Evidence Law Handbook* § 2.30 at 110 (3rd Ed.1993) ("Kentucky's preexisting rape shield law contained no such provision, and there is no Kentucky case law suggesting what might or might not be admissible under this exception" *Id.*).

14. KRE 412(b)(3).

15. Ky., 828 S.W.2d 361 (1992).

16. KRS 510.145 (repealed by adoption of KRE 412):

> (1) As used in this section, "complaining witness" means the alleged victim of the crime charged, the prosecution of which is subject to the provisions of this section.
> (2) In any prosecution under KRS 510.040 through 510.140, or for assault with intent to commit, attempt to commit, or conspiracy to commit a crime defined in any of these sections, reputation evidence, and evidence of specific instances of the complaining witness' prior sexual conduct or habits is not admissible by the defendant.
> (3) Notwithstanding the prohibition contained in subsection (2) of this section, evidence of the complaining witness' prior sexual conduct or habits with the defendant or evidence directly pertaining to the act on which the prosecution is based, may be admitted at the trial if the relevancy of such evidence is determined in the following manner:
> (a) A written motion shall be filed by the defendant with the court no later than two (2) days prior to the day of trial, or at such later time as the court may for good cause permit, stating that the defendant has an offer of relevant evidence of prior sexual conduct or habits of the complaining witness.

cludes that the evidence of C.S.B.'s prior sexual activity "is relevant to provide an explanation for why she had a loose vaginal opening, and rebut the inference of guilt" and therefore "is directly 'pertaining to the offense charged,' as required by KRE 412(b)(3)." The majority's reliance upon the KRE 412(b)(3) exception and *Barnett* is misplaced.

Anderson never alleged in the trial court that the residual exception offered an avenue for the introduction of this evidence, and the only issue before the trial court was whether this evidence was admissible under KRE 412(b)(1)'s exception for "source of semen or injury." By finding the evidence admissible under KRE 412(b)(3), the majority not only divorces its holding from the issue before the trial court, but also ignores KRE 412(b)(1)'s limitation on the nature of admissible source evidence. The *Barnett* Court interpreted a prior statute which allowed the admission of "evidence directly pertaining to the act on which the prosecution is based" whenever the trial court found such evidence relevant and not unduly prejudicial or inflammatory.[17] Although the exception in our prior statute was broad enough to encompass source evidence,[18] KRE 412(b)(1) has narrowed the scope of admissible source evidence to situations where "there is evidence of a connection between the past behavior and a *specific injury* suffered in the events involved in the case. Otherwise the exception might undermine the exclusionary purpose of the general rule."[19]

I do not believe KRE 412(b)(1) offers an avenue for the introduction of this evidence, and I would note that the Circuit Court of Appeals for the Eighth Circuit has held that a similar physical condition, a "stretched hymen," did not constitute an "injury" for purposes of the reciprocal federal rule.[20] The Eighth Circuit recognized

---

(b) A hearing on the motion shall be heard in the judge's chambers. If, following the hearing, the court determines that the offered proof is relevant and that it is material to a fact in issue, and that its probative value outweighs its inflammatory or prejudicial nature, the court shall admit the offered proof, in whole or in part, in accordance with the applicable rules of evidence.
*Id.*

17. *See* KRS 510.145 (repealed by adoption of KRE 412).

18. Lawson, *supra* note 13 at § 2.30 at 110 n. 260 ("Kentucky's preexisting statute had a broadly stated exception (i.e., "evidence directly pertaining to the act") that could have been construed to cover source of semen or injury." *Id.*).

19. Richard H. Underwood and Glen Weissenberger, *Kentucky Evidence: 2001 Courtroom Manual* Ch. 412 at 150 (Anderson Publishing Co.2000) (emphasis added).

20. *See United States v. Shaw*, 824 F.2d 601, 605 (8th Cir.1987), cert. denied, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988):

[W]e conclude that the evidence regarding S.A.'s hymen did not establish the existence of an "injury." The witnesses expressly disavowed finding any evidence of tears to S.A.'s hymen, cuts, scratches, bruises, blood, injury to the vaginal canal, tears that may have healed, or scars. Such findings would demonstrate infliction of an injury. The absence of all these indicia, however, strongly suggests that while the condition of S.A.'s vaginal area might have changed, she was not injured. The testimony, in sum, indicated that S.A.'s hymen was not intact; it had been stretched; her vaginal orifice was widened. Even if this physical condition was the result of sexual intercourse, it is not an injury. Unlike a situation where the evidence indicates, for example, that sexual intercourse caused a tearing or bruising of the hymen or unusual bleeding, the evidence concerning S.A.'s hymen, while it may describe a physiological accommodation, falls short of establishing an injury so as to trigger the applicability of Rule 412's injury exception.
*Id.*

the balancing of interests present in the federal rule when rejecting a broad construction of "injury":

> We recognize that a compelling argument ... is that it defies principles of relevancy to allow past sexual behavior evidence to rebut evidence of a physical consequence that constitutes an injury (for example, evidence that the defendant broke the complainant's nose), while prohibiting it for evidence of a physical consequence that does not constitute an injury (for example, evidence that the defendant caused a stretching of the complainant's hymen). The defendant's need to introduce source evidence is equally strong regardless of what type of physical consequence the prosecution contends the defendant caused when he allegedly raped the complainant. Morever, it can be argued that the type of physical consequence in issue has no bearing on the probative value of the past sexual behavior evidence.

We think that while these evidentiary concerns have persuasive force when viewed in an isolated context, they do not withstand the fact that when Congress created the injury exception to Rule 412, it decided to exclude past sexual behavior evidence in numerous situations where these same evidentiary concerns would dictate that the evidence be admitted. When Congress enacted the injury exception to Rule 412, it had to weigh competing interests: On one hand, the defendant's need to introduce relevant evidence; on the other hand, the complainant's interest in not having her sexual history publicly disclosed and society's concomitant interest in having rapes reported and effectively prosecuted. In balancing these interests, Congress faced a range of alternatives. At one end of the continuum, Congress could have done nothing and allowed the admission of past sexual behavior evidence to rebut the prosecution's physical fact evidence whenever the probative value of the past sexual behavior evidence was not substantially outweighed by its unfair prejudicial effect....

> Congress chose, however, to enact the Rule 412 injury exception and prohibit past sexual behavior evidence in numerous situations where such evidence would be highly probative. Admittedly, by distinguishing between physical consequences that are injuries and those that are not, Congress did not select a point based solely on relevancy considerations at which to draw the line of admissibility.[21]

Although that fact that KRE 412(b)(1) is worded identically to its federal counterpart suggests that we have reached a similar conclusion regarding the competing interests, the majority finds that a different exception entirely authorizes the introduction of evidence relevant to demonstrate the source of any physical manifestation of child sexual abuse. The majority thus finds such evidence admissible on the basis of a residual exception despite a specific exclusion for source evidence which limits itself to source evidence relating to semen and injuries. This is not the "sparing and careful" use contemplated for KRE 412(b)(3)'s exclusion:

> KRE 412(b)(3) authorizes the use of evidence of past sexual behavior of a victim when it is "directly pertaining to the offense charged." The drafters of the new rule provided the following explanation for this exception: "It recognizes the difficulty of anticipating every possible circumstance in which evidence of prior sexual conduct may have a nec-

---

21. *Id.* at 606–7.

essary and proper role in a case other than as evidence of an alleged victim's character." In other words, it is a safety valve that is to be administered "carefully and sparingly without violating the objective of protecting against unwarranted attacks on the character of an alleged victim." [22]

Under the circumstances of this case, the evidence of C.S.B.'s prior sexual conduct does not have "a necessary and proper role," and I cannot agree with the majority's conclusion that KRE 412(b)(3) contemplates a broader exception for source evidence than the one specifically outlined in KRE(b)(1).

The majority's erroneous construction of the KRE 412(b)(3) exclusion appears to stem from its application of the holding in *Barnett* to the factually distinct situation now before us. In *Barnett* the "examining physician ... testified to findings of chronic sexual contact and, without exception, identified appellant as the perpetrator of such contact." [23] The *Barnett* majority found the proffered evidence admissible largely because it cast doubt upon the physician's identification of Barnett—an identification the Court characterized as a "branding":

> Omission of the evidence concerning the ongoing sexual activity between the complaining witness and her brother was devastating to appellant *in light of the testimony of the examining physician who* expressed findings of chronic sexual contact and, without objection, *identified appellant as the guilty party. The possibility that the victim had en-*

gaged in ongoing sexual contact with her sibling was not revealed to the physician during his examination and interview of the victim. This revelation may have caused the physician to qualify or omit his branding of appellant as the assailant.[24]

Here, the examining physician, Dr. Bates, testified that C.S.B. had a "loose vaginal opening," but did not make a finding of frequent sexual activity or attribute such condition to sexual intercourse with the Appellant. Further, Anderson produced no evidence demonstrating that the conduct suggested in the statement upon which Anderson wished to cross-examine C.S.B. could have produced these physical findings. As in *Violett v. Commonwealth*,[25] "there is no direct connection between the evidence of prior sexual activity that directly challenged medical testimony introduced at trial. In that respect, it is clearly distinguishable from Barnett ...." [26] The trial court properly refused to allow defense counsel to question C.S.B. about her alleged prior sexual history.

### III. RELEASE OF WITNESS

I concur with the majority's Part IV conclusion that the trial court acted within its discretion in denying Anderson's motion for a new trial, but I write separately to address the majority's misconception that only trial courts may release witnesses from subpoena.

In reality, the circuit court clerk does not subpoena witnesses. While the clerk technically issues the subpoena for a wit-

**22.** Lawson, *supra* note 13 at § 2.30 at 113.

**23.** *Barnett v. Commonwealth, supra* note 15 at 362. The *Barnett* majority found the portion of the examining physician's testimony which identified the Appellant as the perpetrator significant enough to mention it twice in a six (6) paragraph opinion and to note both times

that the evidence was admitted "without objection."

**24.** *Id.* (emphasis added).

**25.** Ky., 907 S.W.2d 773, 776 (1995).

**26.** *Id.* at 776.

ness,[27] in actual practice, the clerk merely signs the subpoena in blank and gives it to the requesting attorney. The attorney then fills in the blanks and secures service of the subpoena.[28] Accordingly, it is the parties—not the clerk—who, through their attorneys, subpoena witnesses.

The information on a subpoena includes the name of the requesting attorney, together with his or her telephone number,[29] and often a request for the subpoenaed witness to call the attorney. A subpoena "commands [the] person to whom it is directed to attend and give testimony at the time and place and *for the party therein specified*."[30] It is for these reasons that "[a] party who has caused a subpoena to be issued may excuse the witness served from appearing pursuant to its subpoena."[31]

If Appellant desired the attendance of Dr. Cunningham at trial, he had the right to secure his attendance by having a subpoena issued and served upon him. Appellant's right to do so satisfied his right to

compulsory process,[32] and he did not have the additional right to rely upon subpoenas issued and served by the Commonwealth. Since Dr. Cunningham was subpoenaed as a witness *only* by the Commonwealth, the Commonwealth was authorized to release him from its subpoena.

For the above-mentioned reasons, I dissent from the majority opinion and would affirm the judgment of the Wayne Circuit Court.

GRAVES, WINTERSHEIMER, JJ., join this dissent.

---

**27.** *See* RCr 7.02(1) ("A subpoena shall be issued by the clerk ." *Id.*).

**28.** *See Id.* ("The clerk shall issue a subpoena, signed but otherwise in blank, to a party requesting it, who shall fill in the blanks before it is served." *Id.*); RCr 7.02(2) ("A subpoena for an unmarried infant ... shall command each person to whom it is directed to attend with the infant *for the purpose of the infant giving testimony at a time and place for the party therein specified." Id.* (emphases added)); RCr 7.02(4) ("A subpoena may be served by any officer by whom a summons might be served." *Id.*).

**29.** *See* RCr Appendix of Official Forms, Form 6, Court of Justice Form AOC–025 (Subpoena) (hereinafter "Form AOC–025 (Subpoena)").

**30.** CR 45.01; RCr 7.02(1) (A subpoena "shall command each person to whom it is directed

to attend and give testimony at the time and place specified therein." *Id.*); RCr 7.02(3); Form AOC–025 (Subpoena) ("5. ☐ To testify in behalf of _____." *Id.*).

**31.** L. Abramson, Kentucky Practice, Criminal Practice and Procedure § 23.16 (3d ed. WEST) ("Because the subpoena contains the name of the party seeking the testimony, the party appears to be able to waive the presence of the witness." *Id.* n. 1).

**32.** *See State v. Sepcich*, 473 So.2d 380, 386 (La.Ct.App.1985) ("The defendant's right to compulsory process is the right to request subpoenas for witnesses and the right to have the requested subpoenas issued by the court. However, a defendant cannot claim that he was denied the right to compulsory process for obtaining witnesses on his behalf where he does not seek to subpoena the witnesses." *Id.* (citations omitted); *Dean v. Commonwealth*, 30 Va.App. 49, 515 S.E.2d 331 (1999).