Karen **DISHMAN**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 94–SC–392–MR.

Supreme Court of Kentucky.

Sept. 21, 1995.

J. Gregg Clendenin, Jr., Frankfort, for appellant.

Chris Gorman, Attorney General, Samuel J. Floyd, Jr., Assistant Attorney General, Criminal Appellate Division, Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Dishman of trafficking in a controlled substance in the first degree and for criminal syndicate. She was sentenced to ten years for trafficking in a controlled substance and was sentenced to twenty years for criminal syndicate to be served consecutively for a total of 30 years.

Dishman raises six issues on appeal. The questions presented are whether she was denied due process when her motion for continuance was denied; whether she should have been granted severance from the other defendants at trial; whether a directed verdict should have been granted because the evidence was insufficient to show her involvement in drug trafficking on a continuing basis; whether conviction for both trafficking in cocaine and criminal syndicate is double jeopardy; whether the criminal syndicate statute is constitutional, and whether the jury instruction on criminal syndicate was proper.

In 1993, Dishman was among eleven other individuals who were indicted on various charges including trafficking in controlled substances, criminal syndicate, welfare fraud, failure to file state income tax and persistent felony offender charges. Dishman and her four codefendants, Smith, Brooks, Edmonds and Michael Ross, were tried together. All were convicted of various charges, but Ross's case is pending before the Court of Appeals. The arrest and trial of the defendants were the result of a two-year investigation of a group known as the "First Family," and its activities in the illegal drug trade. The principal evidence was presented by a police informant, undercover police officers and the sister of one of the defendants.

The charges against Dishman were based on four so-called "controlled buys" by a police informant who was equipped with an audio recorder and given cash to purchase cocaine. The fifth occasion was arranged by police as a "buy bust" where there was an arrest of the parties involved at the scene.

The first purchase occurred on April 24, 1992 at Lynhurst Apartments in Fayette County. The second buy was on December 15, 1992 at 162 St. Margaret Drive in Fayette County. The third buy took place on February 4, 1993 at the St. Margaret Drive address. The fourth buy was on May 20, 1993, also at St. Margaret Drive. The final purchase of cocaine was called a "buy bust" in Oakwood Park in Fayette County.

The "buy bust" took place on August 20, 1993. An undercover detective met Smith in Lexington, but he sought to move the transaction to a Lexington apartment complex. When the informant refused, arrangements were made with a woman named "Karen" for the buy to take place at a small Lexington park. Afterwards, the informant, the undercover detective and Smith drove to the park where the police arrested Smith and Karen Burdell Wilson. The police seized over seven ounces of cocaine and found $4,500 in the trunk of Wilson's car.

Acting on information from Wilson, who stated that she knew the source of the cocaine, the police obtained a search warrant for 116 Hanley Lane, Apartment 6, in Frankfort, Kentucky. According to Wilson, this unit was rented by Brooks at the time the search warrant was executed. Cocaine, crack cocaine, marihuana and other evidence of drug trafficking were seized and several people including Brooks, Dishman and Edmonds were arrested.

At trial, John G. Bentley, Jr. testified that he was in the "First Family" along with Dishman, Brooks, Ross, Wilson and Smith. Codefendant Smith testified and admitted that he had purchased cocaine from the informant on August 20, 1993, but denied that he or the others were a part of an organized crime syndicate. Dishman and codefendants, Brooks and Edmonds, were arrested during a search of Brooks' apartment that same day. Karen Burdell Wilson testified that she was Sarita Brooks' sister and knew the organization referred to itself as the "First Family." She identified members of the organization as Dishman, Sarita Brooks, Virgil Young, John Bentley, Michael A. Ross, Shadrick Edmonds and Vandree Smith. She stated that

she was also a member of the "First Family." Wilson detailed the operations of the crack cocaine manufacture that occurred in her apartment at 162 St. Margaret Drive in Lexington. She testified that she saw large amounts of cash and cocaine in the possession of all the individual members of the "First Family" and that she saw drug transactions take place at the St. Margaret Drive address. According to Wilson, Sarita Brooks was the head of the "First Family" and Dishman was the second in command with Vandree Smith third in rank.

Dishman was found guilty of trafficking in a controlled substance and criminal syndicate. This appeal followed.

## I Continuance

■ Dishman's first claim of error is that she was denied due process because her motion for a continuance was overruled. We disagree because the circuit judge properly exercised his broad discretion in refusing a continuance in the circumstances of this case.

Three days prior to trial, Dishman moved for a continuance which was overruled. On the first day of trial, she again moved for a continuance and was again refused. She now claims that these rulings were an abuse of discretion by the trial judge.

At arraignment on October 29, 1993, Dishman was represented by the Public Defender Gene Lewter. Five months later, new counsel entered an appearance on her behalf. He told the trial judge that he had been retained after business hours "the day before yesterday." The trial judge overruled all the motions noting that the trial had been set since November of 1993, and ordered original counsel Lewter to assist new counsel in any way possible. Lewter was already representing codefendant Smith in the joint trial.

■ The trial judge has broad discretion in either granting or refusing a continuance. *Pelfrey v. Commonwealth*, Ky., 842 S.W.2d 524 (1993). A reviewing court will not reverse a criminal conviction unless the trial court abused its discretion in the denial of a continuance. *Abbott v. Commonwealth*, Ky., 822 S.W.2d 417 (1992). In order to obtain a continuance, a criminal defendant must show

sufficient cause. *Abbott, supra;* RCr 9.04. Sufficient cause was not established here. A careful examination of the record in this case indicates that there was no abuse of discretion by the trial judge.

On appeal, Dishman contends that the hiring of new counsel three days before trial was based solely on the fact that her family could not raise the money to hire a private attorney until that time. The record indicates that counsel made no such claim of financial hardship before the trial judge. Dishman was arrested on August 20, 1993 and posted bond in the amount of $3,500. In the seven months between arrest and trial, there was no evident effort to obtain private counsel. There was no motion for a continuance alleging any dissatisfaction with her appointed counsel who was an experienced public advocate who represented another codefendant in the same trial. The record also indicates that Dishman failed to contact her appointed counsel, and there is no evidence of any good faith effort on her part to prepare for trial with either appointed counsel or retained counsel. *Cf. Hunter v. Commonwealth*, Ky., 869 S.W.2d 719 (1994).

■ The factors to be considered by a trial judge in deciding a motion for continuance on the basis of employing new counsel include the length of delay, previous continuances and inconvenience to the litigants, witnesses, counsel and the court. In addition, factors to be considered are whether the delay is purposeful or caused by the accused, availability of other competent counsel, complexity of the case, and whether denying the continuance will lead to identifiable prejudice. *Snodgrass v. Commonwealth*, Ky., 814 S.W.2d 579 (1991); *Hunter, supra.* When these standards are applied to this case, we believe that the trial judge properly exercised his discretion in denying a continuance. Dishman presented no legitimate basis for a delay of any length.

■ The claims by the defendant that there was prejudice, that the case was complex, that there was no availability of discovery, that there was no adequate defense and that there was no preparation by prior counsel available to the new trial counsel are unconvincing. The bald assertion that she

was entitled to counsel of her choice must be balanced against the factors recited in *Snodgrass* and *Hunter*. The request for delay appears to have been contrived and not for the sake of valid trial preparation. The arguments presented to the trial judge were unsupported. Dishman fails to show any undue prejudice from the decision of the trial judge. Defense counsel had sufficient time to review the audio and video tapes to be introduced at trial, and he claimed to have worked on the case over the weekend prior to trial. The question of whether he was unable to obtain profiles of the prospective jurors and the opportunity to review the tapes was not presented to the trial judge in support of the motion for continuance. It was not reversible error for the trial judge to exercise his discretion in overruling the defense motion for a continuance.

## II  Severance

■ Dishman now argues that she sought a separate trial and that the failure to separate her from the other defendants caused her great prejudice. She had no prior felony convictions or drug related convictions. A careful examination of the record, and in particular the video tape, fails to show any motion made by defense counsel for a separate trial. During the bench conference, Dishman's counsel renewed her motion for a continuance and various other matters were discussed, but the section dealing with the separate trial motion is inaudible on the video transcript.

■ RCr 9.16 provides that separate trials are required only where it appears that the defendant or the prosecution is or will be prejudiced by the joinder of the offenses or defendants at trial. *Turpin v. Commonwealth*, Ky., 780 S.W.2d 619 (1989). "A criminal defendant is not entitled to severance unless there is a positive showing prior to trial that joinder would be unduly prejudicial." *Humphrey v. Commonwealth*, Ky., 836 S.W.2d 865 (1992). Such was not the case here.

RCr 6.20 permits joinder of defendants if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense

or offenses. *Jackson v. Commonwealth*, Ky., 670 S.W.2d 828 (1984). Dishman was properly tried with her codefendants.

■ Reliance on *Hardin v. Commonwealth*, Ky., 437 S.W.2d 931 (1968) is misplaced. There is no conclusive presumption of prejudice which cannot be overcome by any circumstances. *Jones v. Commonwealth*, Ky., 457 S.W.2d 627 (1970). In *Hardin*, the defendant was indicted for different charges than the codefendant whereas in this case, all the defendants were charged with the same crimes, cocaine trafficking and criminal syndicate.

■ None of the factors recited in *Hoskins v. Commonwealth*, Ky., 374 S.W.2d 839 (1964), were present in this case so as to require severance. Severance is not automatic and a defendant must prove that joinder is prejudicial so as to be unfair or unnecessarily or unreasonably hurtful. *Commonwealth v. Rogers*, Ky., 698 S.W.2d 839 (1985). There was no such proof in this case. The broad allegations of prejudice asserted by Dishman are not the positive showing of undue prejudice required for severance. *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872 (1992).

## III  Directed Verdict

■ The motion for a directed verdict of acquittal because of insufficient evidence to show that Dishman was engaged in criminal syndicate was properly overruled by the trial judge.

■ On a motion for directed verdict of acquittal, the trial judge must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991); *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977). If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that a defendant is guilty, a directed verdict should not be given. *Benham, supra*. Here the evidence against Dishman was that cocaine sales were conducted at the residence of codefendant Brooks; that Brooks was the head of the "First Family" and lived at the St. Margaret

Drive address and also in Frankfort; that Dishman lived at the St. Margaret Drive address and was present in the Hanley Lane apartment on the day of the police search warrant; that Wilson testified that she saw Dishman in the Hanley Lane apartment processing powdered cocaine into crack cocaine; witness Bentley testified that Dishman was a member of the "First Family," and Wilson testified that Dishman ranked second behind Brooks in the "First Family" hierarchy.

When this evidence is viewed in a light most favorable to the Commonwealth, we must conclude that the trial judge properly denied the motion for a directed verdict of acquittal. *Nichols v. Commonwealth,* Ky., 657 S.W.2d 932 (1983).

Here the jury was entitled to determine from the evidence that the collaboration to promote or engage in cocaine trafficking was on a continuing basis. *Commonwealth v. Phillips,* Ky., 655 S.W.2d 6 (1983). A jury has latitude to infer intent from the surrounding facts and circumstances. *Simpson v. Commonwealth,* Ky., 759 S.W.2d 224 (1988).

The standard for appellate review of a denial of a motion for directed verdict based on insufficient evidence is that "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal. *Benham, supra; Yarnell v. Commonwealth,* Ky., 833 S.W.2d 834 (1992). Dishman was not entitled to a directed verdict of acquittal and the trial judge properly submitted the charges to the jury. *Also see Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3 (1983).

### IV Double Jeopardy

The instructions on criminal syndicate were proper. The objection raised by codefendant Brooks and joined by Dishman was properly overruled. Brooks claimed that the cocaine trafficking charges were lesser included offenses of the criminal syndicate charge and that the trial judge permitted the Commonwealth to seek and obtain multiple convictions for the same criminal episode. Dishman contends that the proper relief in this case is to vacate the so-called lesser included offense, the count of cocaine trafficking.

Considering the facts of this case, Dishman was not placed in double jeopardy as a result of her conviction for both cocaine trafficking and criminal syndicate. The count of cocaine trafficking was not a "lesser included offense" of the crime of criminal syndicate.

There is no double jeopardy violation because the statutory crimes of trafficking in a controlled substance and criminal syndicate each require proof of facts which the other does not. There was sufficient evidence to prove Dishman guilty of criminal syndicate independent of the evidence which was introduced to demonstrate that she engaged in cocaine trafficking on another occasion. Criminal syndicate and cocaine trafficking were not factually a single offense or part of a single criminal episode. They did not constitute a single act or single impulse as denounced in *Ingram v. Commonwealth,* Ky., 801 S.W.2d 321 (1990) or *Commonwealth v. Grubb,* Ky., 862 S.W.2d 883 (1993).

The Kentucky Constitution in Section 13 and the Federal Constitution in the Fifth Amendment protect against double jeopardy. The current state of the law is expressed in *Walden v. Commonwealth,* Ky., 805 S.W.2d 102 (1991), which held that the Kentucky Constitution provides "protection against multiple punishment for crimes which are factually a single offense," whether in the context of successive prosecutions or the same trial. Prosecution for two crimes does not constitute double jeopardy if each statutory offense requires proof of a fact which the other does not, and if to establish an essential element of one crime, the prosecution does not prove conduct that constitutes the second offense. *Walden, supra; Ingram, supra.*

An overlap of proof does not necessarily establish a double jeopardy violation. *See United States v. Felix,* 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). The correct test is whether the separately charged crimes are factually a single offense.

The trafficking on December 15, 1992 was established by testimony of the informant

that on that date she went to the St. Margaret Drive residence where Dishman sold her cocaine.

The evidence indicated that cocaine sales were conducted from April 24, 1992 through August 20, 1993 at the St. Margaret Drive residence in Lexington from where purchases of cocaine were made directly or by being sent to other locations where cocaine could be obtained. There was evidence that Dishman was the second in command of the "First Family" and that she lived on St. Margaret Drive with codefendant Brooks.

The evidence showed that Dishman collaborated with codefendants Brooks and Smith on the second controlled buy which occurred on December 15, 1992. The proof at trial demonstrated a considerable amount of income and a variety of cash expenditures for furniture and vehicle rentals. The evidence established the efforts by Dishman to organize and participate in the "First Family" so as to promote and engage in cocaine trafficking on a continuing basis in violation of KRS 506.120. The evidence of her specific act of cocaine trafficking on December 15, 1992 was not necessary to support the criminal syndicate charge under KRS 506.120.

Under the facts of this case, reliance on *Walden* and *Osborne v. Commonwealth,* Ky. App., 867 S.W.2d 484 (1993), is misplaced. The situation presented here is not a single episode or isolated impulse because a criminal syndicate operated over several months. It is entirely permissible to use the trafficking violation as an element of proof of the criminal syndicate charge. It is no double jeopardy violation to use evidence of trafficking as a part of the criminal syndicate proof.

### V  Statute Constitutionality

Dishman argues that KRS 506.120 is unconstitutionally vague because it contains the language "continuing basis." Dishman contends that one cannot understand the difference between the criminal syndicate statute and KRS 218A.1402 which prohibits criminal conspiracy to traffic in a controlled substance. Initially, we must conclude that this issue was not properly preserved for appellate review as required by RCr 9.22 and *Turpin, supra.*

Clearly any difference between the two statutes does not make either unconstitutionally vague. KRS 218A.1402 prohibits a conspiracy as defined in KRS 506.040. KRS 506.040 is distinguishable from KRS 506.120, the criminal syndicate offense, because the former does not require the involvement of five or more persons as does the latter. A conspiracy can result from an agreement between one or more persons, KRS 506.040, or otherwise. *Cf. Commonwealth v. Sego,* Ky., 872 S.W.2d 441 (1994).

The "continuing basis" language in the criminal syndicate statute has been held to be proper because the standard of proof on this element of the crime is by its very nature indefinite. *Commonwealth v. Phillips,* Ky., 655 S.W.2d 6 (1983). The prosecution is not held to proving a specific number of incidents or any element of time, but must show by the proof, what the jury could infer from the evidence as intent to collaborate on a continuing basis. This intent to collaborate on a continuing basis was demonstrated with regard to Dishman and the "First Family." The criminal syndicate statute is not unconstitutionally vague and there was no error in this regard.

### VI  Instructions

The jury instruction on criminal syndicate did not amount to reversible error. Dishman complains that the jury instruction should have contained the words "continuing basis" in both Paragraphs A and B of the instructions because those words are mentioned more than once in KRS 506.120.

The words "continuing basis" in the jury instructions were made applicable to both Paragraphs A and B of the instruction by the word "and" in the instruction. In order to find guilt, the jury had to believe both Paragraphs A and B. There was no need to include the words "continuing basis" in both paragraphs. The instruction was correct. Sufficient evidence was presented to support the jury verdict. *Boulder v. Commonwealth,* Ky., 610 S.W.2d 615 (1980) is not applicable.

The judgment of conviction is affirmed.

FUQUA, LAMBERT, LEIBSON and REYNOLDS, JJ., concur.

STEPHENS, C.J., and STUMBO, J., concur in result only.