# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

$\mathfrak{Supreme\ Court\ of}$

2018-SC-000064-MR

DATE 3/7/19 *Kim Redmon, DC*

COREY J. BUTTS                                                APPELLANT

|  | ON APPEAL FROM WARREN CIRCUIT COURT |
|---|---|
| V. | HONORABLE STEVE ALAN WILSON, JUDGE |
|  | NO. 13-CR-00749 |

COMMONWEALTH OF KENTUCKY                              APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

In a trial before the court without a jury, the trial court found Corey J. Butts guilty of kidnapping, two counts of rape, fourth-degree assault, and of being a first-degree persistent felony offender. For these crimes, the trial court imposed a sentence of 40 years' imprisonment. Butts now appeals the resulting judgment to this Court as a matter of right,[1] raising several issues for review. Finding no reversible error in the proceedings, we affirm the judgment.

---

[1] *See* Ky. Const. § 110(2)(b) ("Appeals from a judgment of the Circuit Court imposing a sentence of . . . imprisonment for twenty years or more shall be taken directly to the Supreme Court.").

# I. BACKGROUND.

Butts and the victim gave very different accounts at trial of the events giving rise to the criminal charges against Butts.

According to the victim's trial testimony, she left her apartment at 1:45 in the morning to walk to a friend's house. On her way, an individual she had never seen before, whom she later identified as Butts, spoke to her from his parked car and asked for directions. After she gave him directions and walked away, Butts attacked at her, struck her on the back of her head, dragged her into the passenger's seat of his car, and drove away.

The victim testified that Butts threatened her with a gun[2] to engage in sexual intercourse, but she told him she was unable to have sex because she had recently given birth. Reacting to this, Butts struck the victim in the face with the "gun."

Butts pulled the car into a driveway and ordered the victim to put a dark-colored shirt underneath her, which she did. Butts then raped her, brandishing the "gun" and threatening to kill her if she screamed. Afterwards, Butts drove the victim to his apartment.

Upon arriving at the apartment, the victim stayed in the car while Butts sent another woman away from the apartment. He then ordered the victim to exit the vehicle and enter the apartment.

---

[2] It does not appear that a true firearm was ever found. Rather, police recovered from the car a lighter in the shape of a pistol.

Once inside, Butts directed the victim to "wash off" using a brown washcloth, which she did. Investigators later found this washcloth. Butts then forced the victim to perform oral sex on him, then he raped her again. After the victim cleaned herself off, Butts and the victim left the apartment in his vehicle.

The victim testified that during the drive, Butts told the victim that he had just gotten out of prison, that he was a sex offender, and that he intended to kill her and throw her body into the river. The victim also testified that Butts had two firearms during their interaction.[3]

At some point during their drive, the car ran out of gas. Butts then took the victim at gunpoint, and they began walking. They met a man walking his dogs, and the victim ran to him. Butts fled. The man gave the victim his cell phone to call the police and released one of his dogs to chase Butts. At trial, the man could not identify Butts as the perpetrator, but he noted simply that the perpetrator spoke with a male voice.

According to Butts's trial testimony, he met the victim at a convenience store before the night in question. Over a course of time, they developed a relationship of consuming drugs together and engaging in sexual intercourse frequently.

On the night in question, the victim arrived at Butts's apartment, and the two consumed drugs and engaged in consensual sexual intercourse. The victim then left the apartment and returned later.

---

[3] Again, no firearms were ever found.

Upon her return, the victim showed interest in crack cocaine lying on Butts's dresser. The two smoked a piece of it. The victim then asked if Butts wanted to engage in intercourse again, to which Butts initially agreed but then declined.

At some point, Butts left the room, and, returning, noticed that his crack cocaine was missing. Butts asked the victim if she had taken it, and she smirked and admitted she had. Butts admitted that he reacted by punching the victim twice in the eye. The victim then left the apartment, stating that she would return with her boyfriend.

Butts also left the apartment and drove to a friend's home where he spent the rest of the night. His left hand was bloodied from having punched the victim, so he used a gray tee shirt in the car to clean the blood from his hand. The next morning, Butts fled to Nashville when he learned of the victim's allegations against him.

The grand jury indictment charged Butts with kidnapping, first-degree sodomy, second-degree assault, two counts of first-degree rape, and of being a first-degree persistent felony offender. Pleading not guilty, Butts opted for a bench trial and testified in his own defense. The trial court acquitted Butts of the sodomy charge but found him guilty of kidnapping, both counts of rape, fourth-degree assault, and of being a first-degree persistent felony offender. The trial court sentenced Butts to 40 years' imprisonment and entered judgment accordingly.

## II. ANALYSIS.

### A. The trial court did not err in rejecting Butts's request to dismiss the charges against him and in finding Butts guilty.

Butts alleges that the trial court erred when it failed to dismiss the charges against him and found him guilty of the crimes that it did.[4] That this issue is preserved for our review is undisputed.

Because this was a bench trial, Kentucky Rules of Civil Procedure[5] ("CR") 41.02(2) is the standard the trial court uses when determining the appropriateness of early dismissal rather than the directed-verdict standard used in jury trials.[6] CR 41.02(2) states:

> In an action tried by the court without a jury, after the [Commonwealth] has completed the presentation of [its] evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the [Commonwealth] has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the [Commonwealth] or may decline to render any judgment until the close of all the evidence.

When ruling on a defendant's CR 41.02(2) motion, "[t]he trial court 'must weigh and evaluate the evidence' rather than, with regard to directed verdict, 'indulge

---

[4] Butts contests all his convictions except his fourth-degree assault conviction, of which he admits his guilt.

[5] "The Rules of Civil Procedure shall be applicable in criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure." Kentucky Rules of Criminal Procedure ("RCr") 13.04.

[6] *R.S. v. Commonwealth*, 423 S.W.3d 178, 184 (Ky. 2014) ("[A] directed verdict 'is clearly improper in an action tried by a court without a jury.' Instead, 'the appropriate procedural mechanism for early dismissal is found in CR 41.02(2).'") (quoting *Brown v. Shelton*, 156 S.W.3d 319, 320 (Ky. App. 2004)).

5

every inference in the [Commonwealth's] favor.'"[7] We review a trial court's application of CR 41.02(2) for abuse of discretion.[8] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[9]

It appears that Butts also challenges the trial court's ultimate finding of guilt in this case. "The findings of the trial judge may not be set aside unless clearly erroneous with due regard being given to the opportunity of the trial judge to consider the credibility of the witnesses."[10] "If the trial judge's findings of fact in the underlying action are not clearly erroneous, i.e., are supported by substantial evidence, then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion."[11]

Butts's main contention is that the trial court should have dismissed the charges because the only eyewitness presenting the prosecution's version of events, the victim herself, lied to the trial court, which should have destroyed her credibility. The victim was asked at trial whether she had consumed drugs at any point close in time before or during the events in question, to which the victim responded with an adamant denial. But a toxicology screening administered a few hours after the events in question showed that she had

---

[7] *R.S.*, 423 S.W.3d at 184 (quoting *Morrison v. Trailmobile Trailers, Inc.*, 526 S.W.2d 822, 824 (Ky. 1975)).

[8] *R.S.*, 423 S.W.3d at 184 (citing *Jaroszewski v. Flege*, 297 S.W.3d 24, 31 (Ky. 2009)).

[9] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (internal citations omitted).

[10] *Lawson v. Loid*, 896 S.W.2d 1, 3 (Ky. 1995) (internal citations omitted).

[11] *Talley v. Paisley*, 525 S.W.3d 523, 526 (Ky. 2017) (quoting *Commonwealth v. Deloney*, 20 S.W.3d 471, 473–74 (Ky. 2000)).

cocaine in her system. Butts also points out that the victim testified that she was walking to her "best friend's" house on the night in question, but she could not recall at trial her best friend's last name. Butts argues that the victim's weakened credibility and the lack of evidence against him when weighed against the evidence supporting his version of the story compelled the trial court to dismiss all but one of the charges against him.

The Commonwealth's proof included the victim's testimony, testimony from law enforcement officers who investigated the crime scenes and apprehended Butts in Nashville, and the dog walker who assisted the victim. Law enforcement testimony related that upon responding to the victim's call, they found the victim crying, upset, "in hysterics," and appearing "shell-shocked." The dog walker's testimony included the fact that he was so concerned with the situation that he released one of his dogs to apprehend the person that he could only identify as having a male voice. Finally, photographs of the victim showed injuries to her right eye, left jaw, and thigh.

Specific physical evidence included items recovered from Butts's apartment, car, the Nashville hotel room where he was staying, and from the administration of a rape kit. Physical evidence recovered from Butts's apartment included a washcloth containing semen, blood, and the victim's DNA. Physical evidence recovered from Butts's car included: a lighter in the shape of a pistol; a gray shirt found in the front passenger seat containing the victim's blood and DNA; a section of the front passenger seat containing the victim's blood and DNA; and a wallet containing Butts's inmate and social

security cards. Physical evidence recovered from Butts's hotel in Nashville included a hotel receipt bearing the name of Butts's father and one-way flight information. Physical evidence collected from the administration of the rape kit included semen, blood, and Butts's DNA.

Considering this evidence, we cannot say that the trial court abused its discretion by denying Butts's motion to dismiss the charges, nor can we say the trial court erred in its ultimate findings of guilt. As part of its factfinding, the trial court itself recognized that the victim lied about her drug use and questioned the victim about why she went out walking at 1:45 in the morning. But other testimony provided by the victim showed her to be a credible witness, as the trial court pointed out.

For example, the trial court noted that while Butts claimed that the two never entered the car where he allegedly raped the victim, the victim was able to lead officers to that car and recall the exact routes they traveled while in the car. Moreover, the physical evidence of the victim's blood found in the car on both the shirt and the passenger seat corroborates her story. Finally, the trial court noted that the victim provided officers with a great deal of information about Butts to assist them in identifying him with the exception of one critical fact—Butts's name. The fact that the victim did not provide law enforcement with Butts's name when providing them with other identifying information lends credence to her story that she had never met Butts before the night when the crimes occurred.

"[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court."[12] Moreover, the factfinder "may believe all of a witness's testimony, part of a witness's testimony, or none of it."[13] Giving due deference to the findings of the trial court as to the victim's credibility and the weighing of evidence, coupled with all the evidence adduced at trial supporting the trial court's decision, we can find no reason to conclude that the trial court erred in denying Butts's request for dismissal or in its ultimate finding of guilt.

## B. No reversible error occurred from the trial court's handling of Butts's speedy trial motion and requests for new counsel.

Butts's alleges that the trial court erroneously forced him to choose between asserting his constitutional right to a speedy trial and his right to be represented at trial by counsel of his own choosing.

The grand jury returned the indictment against Butts on November 30, 2013. In March of 2014, Butts's retained counsel withdrew apparently because Butts failed to pay him. Butts hired new counsel in April of 2014, but new counsel withdrew in March of 2016. In May of 2016, Butts retained a third attorney, who also ended up withdrawing in May of 2017.

On May 8, 2017, the trial court appointed the Department of Public Advocacy to represent Butts, and, about a month later, two public defenders entered their appearance on Butts's behalf.

---

[12] *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky. 2003) (citing *Bowling v. Natural Resources and Environmental Protection Cabinet,* 891 S.W.2d 406 (Ky. App. 1994)).

[13] *Robinson v. Commonwealth,* 325 S.W.3d 368, 371 (Ky. 2010).

At an August 14, 2017, status conference, the Commonwealth informed the trial court that Butts informed his counsel that Butts wanted a *Faretta* hearing.[14] The trial court instructed defense counsel to file a formal motion if Butts truly wanted to have such a hearing.

On September 8, 2017, defense counsel filed a speedy-trial motion on behalf of Butts. The trial court held a status conference on September 11, 2017, and discussed the speedy-trial motion, at which time the parties agreed to set trial for January 23, 2018. During the status conference, the trial court informed Butts that granting his motion for speedy trial would, practically speaking, preclude him from seeking to change attorneys.

Butts wrote a letter to the trial court dated November 22, 2017, claiming problems in defense counsel's representation.

On December 7, 2017, defense counsel filed a motion on behalf of Butts requesting a *Faretta* hearing. And the trial court conducted a *Faretta* hearing on December 19, 2017. During this hearing, Butts withdrew his motion to remove defense counsel from his representation.

On the morning of the first day of trial, January 23, 2018, Butts requested from the trial court new attorneys and for a postponement of the trial to give him time to find them. The trial court construed Butts's motion as a collateral attack on a judgment that had not yet been entered, *i.e.* an RCr

---

[14] *Faretta v. California*, 422 U.S. 806 (1975). "*Faretta* requires that a defendant seeking self-representation be 'made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing, and his choice is made with eyes open.'" *Commonwealth v. Terry*, 295 S.W.3d 819, 822 (Ky. 2009) (quoting *Faretta*, 422 U.S. at 835).

11.42 motion. The trial court responded that it could not address Butts's ineffective-assistance-of-counsel concerns at that time. The parties then proceeded to trial.

Butts appears to raise three claims of error. First, he argues that the trial court "forced him to choose between his constitutional rights," *i.e.* between his right to a speedy trial and his right to counsel of choice. Second, Butts argues that the trial court's conducting of the *Faretta* hearing was ineffective and thus reversible error. Third, Butts argues that the trial court's implicit denial of Butts's request to postpone the trial was erroneous. We hold all these claims of error to be meritless.

To start, Butts does not make clear at what point he is arguing that the trial court forced him to choose between his right to a speedy trial and his right to counsel of choice. From the facts, it appears that the "forced choice" possibly arose in two instances, 1) the September 11 status conference and 2) on the January 23 trial date.

At the September 11 status conference, however, the trial court never forced Butts to do anything regarding his speedy-trial motion, namely, because Butts voluntarily agreed with the Commonwealth to the January 23 trial date before the status conference took place. And the record reveals that the trial court simply explained to Butts that his assertion of his right to a speedy trial would be incompatible with his assertion of his right to counsel of choice— Butts would need time to locate substitute counsel, which would further delay the trial date. The trial court never forced Butts to decide on anything—it

11

simply informed Butts about the practical reality of the conflict between his two motions.

As for the January 23 trial-date conflict, Butts, himself, presented the trial court with this dilemma: If the trial court delayed trial to give Butts time to find and hire new counsel, he would claim a violation of his right to a speedy trial; if the trial court forced Butts to proceed with trial with his two appointed DPA attorneys, he would claim a violation of his right to counsel of choice because the trial court forced him to proceed with counsel he did not want or to represent himself. This is the argument that Butts makes—that his constitutional rights would have been violated no matter what the trial court did on the morning of trial. Such a gaming of the system is evident by the fact that Butts can point to no legal authority supporting his position. The trial court did not err in its handling of Butts's constitutional rights.

Next, Butts claims that the *Faretta* hearing was ineffective because the trial court convinced Butts to keep the two defense attorneys representing him, which continued a problematic relationship between his attorneys and himself. But the *Faretta* hearing appears to have been, in fact, successful. The purpose of a *Faretta* hearing is to determine whether an individual seeking self-representation is making an intelligent, knowledgeable, and voluntary decision about self-representation.[15] The record reveals that the trial court did just that. Ultimately, Butts decided to keep his two attorneys, going so far at the end of the hearing to say, "I just want to say thank you, Your Honor. I think

---

[15] *Terry*, 295 S.W.3d at 822 (citing *Faretta*, 422 U.S. at 835).

everything is going to turn out all right." The trial court informed Butts of what he could expect if he chose to represent himself, and Butts decided to keep his attorneys. We fail to see how any error arises from the trial court's conducting of the *Faretta* hearing.

Finally, in addressing Butts's claim of error regarding the trial court's denial of his continuance, we review this claim of error for an abuse of discretion.[16] "In order to obtain a continuance, a criminal defendant must show sufficient cause."[17] "The factors to be considered by a trial judge in deciding a motion for continuance on the basis of employing new counsel include the length of delay, previous continuances and inconvenience to the litigants, witnesses, counsel and the court . . . whether the delay is purposeful or caused by the accused, availability of other competent counsel, complexity of the case, and whether denying the continuance will lead to identifiable prejudice."[18]

In sum, the *Dishman* analysis weighs heavily in favor of the trial court's decision to proceed with trial. The delay here was entirely caused by Butts and his proven inability to find attorneys to suit him—the Commonwealth was ready to proceed with trial at any time. During Butts's *Faretta* hearing, the trial court noted that it had spoken with Butts's counsel and the Department of Public Advocacy had no attorneys immediately available to replace the ones assigned to Butts's case. Butts was on trial for multiple felonies, and his two

---

[16] *Dishman v. Commonwealth*, 906 S.W.2d 335, 339 (Ky. 1995).
[17] *Id.*
[18] *Id.*

attorneys stood ready to defend him, affirmatively indicating so. Finally, we can only speculate about how long it would have taken Butts to hire new private counsel of his own choosing, as he specifically stated he wanted a "private attorney." The trial court correctly denied Butts's motion for a continuance and did not err in any way in its protection of Butts's constitutional rights.

## C. No reversible error occurred in the admission of the testifying officer's statement that Butts refused to speak with police about the events in question.

Butts alleges that palpable error occurred when the trial court allowed into evidence an officer's testimony that Butts refused to speak with the police about the events in question.

Palpable error requires a showing that the alleged error affected the "substantial rights" of a defendant, where relief may be granted "upon a determination that manifest injustice has resulted from the error."[19] To find that "manifest injustice has resulted from the error," this Court must conclude that the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable."[20]

The error Butts claims here is that the admission into evidence of a single statement by a testifying officer that Butts refused to speak with police amounts to palpable error mandating reversal. While the admission into evidence of a defendant's refusal to speak with law enforcement can

---

[19] RCr 10.26.
[20] *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006).

14

undoubtedly be improper,[21] we can definitively say here that Butts's refusal did not affect the trial court's determination of guilt.

At the end of this bench trial, the trial court carefully outlined all the reasons for its finding of guilt.[22] Such is the benefit for appellate courts in reviewing bench trials—we can hear from the fact-finder a detailed explanation about how and why it reached the decision. Unlike jury trials in which the jury does not explain its verdict, the trial court, having conducted a bench trial, did so here. Never did the trial court say that Butts's refusal to speak with investigating officers affected its decision.

As such, we can definitively say that the inclusion of the officer's statement into evidence had no impact whatsoever on the trial court's determination of guilt. Inclusion of the officer's statement has no effect on the proceeding nor on Butts's "substantial rights."

### III.     CONCLUSION.

Finding no reversible error on the part of the trial court, we affirm the judgment.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting. All concur.

---

[21] *Baumia v. Commonwealth*, 402 S.W.3d 530, 539 (Ky. 2013).

[22] CR 52.01 ("In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.]").

COUNSEL FOR APPELLANT:

John Gerhart Landon
Assistant Public Defender


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffery Allan Cross
Assistant Attorney General